IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2000

**DAYLON DEMETRIC ROBERTS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 59299      Ray L. Jenkins, Judge**

_____

**No. E1999-02180-CCA-R3-PC**
**December 1, 2000**
_____

The Defendant was convicted of murder perpetrated in an attempt to commit a robbery. His conviction was affirmed on appeal to this Court, and the Tennessee Supreme Court denied permission to appeal. The Defendant subsequently filed a petition for post-conviction relief. After an evidentiary hearing, the trial court denied the petition. The Defendant now appeals the trial court's denial of post-conviction relief, arguing that conflicts with his attorneys prevented the attorneys from providing him effective assistance of counsel at trial and that the trial court forced him to proceed to trial despite those conflicts. Finding no error in the record before us, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Brandt Davis, Knoxville, Tennessee, for the appellant, Daylon Demetric Roberts.

Paul G. Summers, Attorney General and Reporter, Patricia C. Kussman, Assistant Attorney General, Randall E. Nichols, District Attorney General, and Robert L. Jolley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  FACTS

In November 1993, a Knox County jury convicted the Defendant of murder perpetrated in an attempt to commit a robbery. The Defendant appealed the verdict to this Court, and we affirmed the conviction on October 5, 1994. See State v. Daylon Demetric Roberts, No. 03C01-9403-CR-00117, 1994 WL 540555 (Tenn. Crim. App., Knoxville, Oct. 5, 1994). The Tennessee Supreme Court denied permission to appeal on March 6, 1995. See id.

On direct appeal, this Court summarized the facts underlying the Defendant's conviction as follows:

> The facts in this case are straightforward and virtually undisputed. In the early morning hours of August 31, 1992, appellant and three other males observed a car parking in an Austin-Homes parking lot. Two men got out of the car, leaving Greg Norris, the driver, alone. Appellant and his three companions approached the car on the passenger side and then turned back. Roberts and the other would-be robber approached the driver's side. According to appellant's companions and a witness who overheard the incident, appellant, who had a gun in his possession, demanded that the victim roll down his window and hand over his money. When the victim refused and started the car in an attempt to leave, appellant shot him in the head.

Id. at *1.

After all avenues of direct appeal were exhausted, the Defendant filed a pro se petition for post-conviction relief on September 13, 1995, in which he alleged (1) that his trial counsel were ineffective for "failing to maintain meaningful connections with [him]," failing to conduct an adequate investigation, and failing to prepare a defense; and (2) that he was denied due process when the trial court declined to appoint new counsel to represent him prior to trial. Upon the Defendant's motion, the post-conviction court subsequently appointed counsel to represent the Defendant in his post-conviction proceedings. Approximately a month later, the Defendant filed a "Motion for Reappointment of Counsel," alleging that his new attorney had "failed to make and maintain any meaningful communications" with him since his appointment.

The Defendant next filed a motion requesting that the post-conviction judge, the Honorable Richard Baumgartner, recuse himself because he had presided over the Defendant's trial and had declined to appoint new counsel for the Defendant prior to trial, which the Defendant contested in his petition for post-conviction relief. Judge Baumgartner granted the Defendant's motion for recusal on December 17, 1996. The Defendant later filed a pro se "Motion to Amend Petition for Post Conviction," presenting four new grounds for relief. On November 23, 1999, the trial court conducted an evidentiary hearing on the Defendant's petition for post-conviction relief, after which it denied relief. The Defendant now appeals the trial court's denial of post-conviction relief.

The Defendant was represented at trial by two court-appointed attorneys, David Gall and Aubrey Davis. At the hearing on the petition for post-conviction relief, the Defendant testified that he was incarcerated from August 1992, the time of the offense in this case, until he was released on bond approximately five or six months before the time of trial in November 1993. The Defendant testified that Gall and Davis were appointed to handle his case after he was released on bond and that he met with them about three times prior to trial. The Defendant complained that he and his lawyers could not agree as to "what was in [his] best interest" and reported that the conflict between them progressed to such a level that they were unable to communicate. Specifically, the Defendant complained that his attorneys did not develop a defense for his case and that they encouraged him to accept a plea agreement despite his desire to go to trial. He also complained that although he wished to testify at trial, his attorneys advised him not to testify, and he stated that he eventually

decided to follow their advice. When asked what his testimony would have been, the Defendant responded that he would have testified that he "wasn't the triggerman, that [he] didn't shoot anybody."

The Defendant testified that he raised the issue of his dissatisfaction with his attorneys for the first time on the day of trial. The record of the trial reflects that the Defendant addressed the court as follows immediately prior to jury selection:

> I just feel I need– I need more time to get me another lawyer 'cause they haven't been representing me right. I've been out for three months, and they only came to talk to me so many times. And when I did come to talk to 'em all they was talkin' about was coppin' out, and I ain't ready to cop out, you know, like that. And so, therefore, I feel– they told me that they didn't have no defense for me so I feel that I need to get a representative who says he has some kind of defense for me.

The court then asked the Defendant why he had not attempted to hire his own attorney in the one and a half years since his indictment in this case, and the Defendant replied that he had been incarcerated for most of the time. Although the Defendant did not have funds to hire an attorney, his mother informed the court that she could help him pay for legal services.

The Defendant's attorneys were then given the opportunity to respond to the Defendant's allegations. Davis, an Assistant Public Defender, agreed that defense counsel had had "difficulty . . . communicating with [the Defendant]." He stated that he and Gall had been "unable to get the [D]efendant to adopt what [they] believe[d] to be a realistic view of his case." Davis reported that the Defendant failed to show up for three or four appointments with his attorneys and that on several other occasions, he refused to meet with his attorneys upon their request, claiming that the attorneys were not "representing his best interest." Davis stated that he and Gall met with the Defendant approximately three times prior to trial. He recalled,

> On each of these occasions the appointments never lasted more than an hour because what we've discovered is when we begin discussing the facts of the case or where we are on the case, . . . [the Defendant] has on these occasions decided that the discussion wasn't going the way he wanted it to and he would leave the office. This occurred on every occasion we discussed the case with him . . . .

However, Davis maintained that he had "a full command of what evidence [defense counsel had] been able to obtain by discovery," and he informed the court that defense counsel had interviewed witnesses.

Following Davis' response to the Defendant's allegations, the trial judge requested to meet with counsel for both the defense and the State in chambers. When he returned to open court, the trial judge addressed the Defendant as follows:

> First of all, you have been indicted in this case since August of 1992. You've had from that time until present to hire a lawyer if you chose to do that. You were incarcerated, and a Motion for a Bond Reduction was considered by this Court and granted in January. And as I understand it then, you were released from custody in June of this year, some almost six months ago.

You have not hired another lawyer between then and now. You have not cooperated with your lawyers that are assigned to represent you who, by the way, I know to be very capable, experienced and excellent lawyers.

I'm going to give you a choice today, Mr. Roberts, and this is your choice. Your choice is– let me add one other fact to this mix, and that is it's my understanding that there has been, during this time that you've been released, another arrest[1] which, of course, would in and of itself be a condition for the revocation of your bond had that been brought to my attention and had the bonding company asked to be relieved from your bond as a result of that. I would have done that without hesitation. It's a statutory violation authorizing the revocation of the bond.

This is your choice: I will give you the opportunity to hire another lawyer. But if I do that I'm going to take you into custody right now and hold you in custody until this case is set for trial. It will be up then to you and your family to hire a lawyer to represent you in this matter.

But if you make that choice to do that you will be held in custody until the trial of this case, which I anticipate then I would set some time in early 1994, probably in February.

I'm going to give you the opportunity. I'm going to give you a couple of minutes to discuss that with your family and make that decision. If not, if you choose to continue with these lawyers, we're going to trial today.

Following these comments, the Defendant conferred with his family and decided to proceed to trial that day.

At the post-conviction hearing, Aubrey Davis elaborated on the statements he made to the court on the day of trial regarding the problems between the Defendant and defense counsel. He testified that the Defendant never asked his defense counsel to withdraw from the case. Davis also stated that despite their lack of communication with the Defendant, he and Gall "did as much investigation on [the Defendant's case] as . . . two people can, given the amount of cooperation that" they received from the Defendant. According to Davis, they went to the scene of the crime, attempted to locate all witnesses, tracked down certain witnesses, and went to an apartment complex where others involved in the crime allegedly were staying; he stated that four investigators assisted them in the investigation. He described their investigation as "very thorough." Davis testified that during their investigation of the case, defense counsel were unable to locate any witnesses who would have helped the Defendant's case. He stated, "I cannot honestly say that [the problems between the Defendant and defense counsel] affected the outcome of the case."

Davis also testified that during the time he represented the Defendant, he lived at the same apartment complex where the Defendant's family lived. He stated that he often encountered the Defendant there and told the Defendant that it was "very important" that the Defendant meet with his attorneys to discuss the case. He reported that the Defendant often would not respond to him

---

[1] The Defendant testified at the hearing on the petition for post-conviction relief that he "caught a fleeing charge" while he was out on bail for this offense, but that he was not convicted.

during these encounters and that the Defendant would sometimes walk away while Davis was speaking to him.

With regard to the Defendant's desire to testify at trial, Davis testified that he and Gall did not believe the Defendant would make an effective witness. He also stated that the Defendant had given a statement to police, which was later entered into evidence at trial, in which he admitted to planning the robbery with the other individuals involved in the crime and to stopping at the victim's car with the intent to rob him. Davis explained that even if the Defendant did not actually fire the gun which killed the victim, as the State contended, the Defendant had confessed that he had participated in a robbery that resulted in a death. Thus, there was no defense. See State v. Carson, 950 S.W.2d 951, 955 n.5 (Tenn. 1997) (stating that defendant who participates willingly in a robbery may be convicted of first-degree murder even if a co-perpetrator of the felony is the actual killer). For these reasons, defense counsel advised the Defendant not to testify, but Davis maintained that the decision of whether to testify was ultimately left to the Defendant.

Finally, Davis testified about the plea agreement offers made to the Defendant by the State prior to trial. He recalled that the State first offered fifty years and eventually offered "25 . . . on the second-degree and . . . offered about 20, asking us to plead up in the range, on the ag[gravated] robbery." Davis testified that based upon their investigation of the case, he and Gall concluded that there was a "very strong likelihood" that the Defendant would be convicted and therefore advised the Defendant to accept a plea agreement. However, the Defendant refused to consider any of the State's offers.

David Gall also testified at the hearing on the petition for post-conviction relief. He stated that he had been employed as an Assistant Public Defender since 1990 and that he had practiced law for approximately ten years prior to that time, primarily in the area of criminal defense. He testified that his recollection of the investigation of the Defendant's case and the pretrial activity in the case was basically the same as Davis' recollection. He testified that the Defendant told his attorneys his version of what happened on the night of the murder, but did not give them much other help. Gall recalled, "[The Defendant] wouldn't stay seated long enough to help us." Gall stated that what he characterized as the "[p]ersonality conflicts" between defense counsel and the Defendant did not affect the attorneys' pretrial efforts but did "affect[] [the Defendant's] ability to benefit from what [his attorneys] were doing."

Gall reiterated that he and Davis "very strenuously tr[ied] to make [the Defendant] understand that he really did not have a defense . . . and that it was in his best interest to accept a plea to a lesser offense." He stated that he believed the State's final settlement offer to be very generous. He added that had the Defendant accepted the State's offer, he would have been eligible for parole after serving thirty percent of the sentence, rather than after serving eighty-five percent of the sentence.

II. ANALYSIS

The Defendant argues that he should be granted post-conviction relief because he received ineffective assistance of counsel at trial. He contends that "personal conflicts" between his counsel and him inhibited his attorneys from representing him effectively at trial. In his brief, he states,

> The issue in this appeal is the right of an indigent defendant to have trial counsel appointed with whom there is no conflict. The issue is not ineffectiveness of counsel during trial or in trial preparation due to specific acts or error or omission by trial counsel which resulted in the failure by that counsel to provide representation that meets the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

He further argues that he was forced to proceed to trial despite this conflict.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's findings of fact are afforded the weight of the jury and are conclusive on appeal unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of a particular case is de novo. Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

The Defendant contends that the trial court erred by "ordering him jailed if he elected to attempt to obtain his own private attorney." A trial court has wide discretion in matters concerning the substitution of counsel, and a trial court's decision concerning such matters will not be overturned absent an abuse of discretion. State v. Brannam, 855 S.W.2d 563, 566 (Tenn. 1993); State v. Gilmore, 823 S.W.2d 566, 569 (Tenn. Crim. App. 1991). A criminal defendant seeking to substitute counsel must establish to the satisfaction of the trial judge (a) that "the representation being furnished by counsel is ineffective, inadequate, and falls below the range of competency expected of defense counsel in criminal prosecutions," (b) that "the accused and appointed counsel have become embroiled in an irreconcilable conflict," or (c) that "there has been a complete breakdown in communications between them." Gilmore, 823 S.W.2d at 568-69. However, a defendant who willfully refuses to cooperate with appointed counsel is not entitled to the appointment of new counsel. State v. McClennon, 669 S.W.2d 705, 707 (Tenn. Crim. App. 1984). As this Court has reasoned, "the Constitution does not require that the court continue to appoint additional counsel until one is appointed with whom the defendant might elect to cooperate." Id.

In this case, the Defendant was indicted approximately one and a half years before trial. Although he had been incarcerated for the majority of that time, he was released from custody approximately six months before trial and had been aware of his impending trial date for some time prior to trial. Nevertheless, he did not inform the trial court of any problems with his representation, nor did he request new counsel until the morning of trial. Moreover, despite his claim that, with the help of his family, he could afford to hire a new attorney, he had no substitute counsel present with

-6-

him in court. Had the trial court granted the Defendant's request on the morning of trial, a continuance of trial obviously would have been necessary.

As this Court has pointed out, "'the right to retain counsel of one's own choice is not absolute.'" State v. Zyla, 628 S.W.2d 39, 41 (Tenn. Crim. App. 1981) (quoting United States v. Burton, 584 F.2d 485, 489 (D.C. Cir. 1978)). It must be balanced against "'the public's interest in the dispensation of justice that is not unreasonably delayed . . . .'" Zyla, 628 S.W.2d at 42 (quoting Burton, 584 F.2d at 489)).

> Once a fair and reasonable initial opportunity to retain counsel has been provided, and adequate counsel obtained, the court, mindful of the accused's interest in having counsel in whom he has confidence, is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case.

Id. (quoting Burton, 584 F.2d at 490)).

We cannot conclude that the trial judge abused his discretion by requiring the Defendant to choose between proceeding to trial with his present counsel and being incarcerated until such time that he could retain new legal counsel and the case could be reset for trial. Allowing the Defendant time to retain new counsel and to prepare for trial would have resulted in a lengthy continuance of the case, and it was well within the trial judge's discretion to deny a continuance. See id. at 41. The trial judge also noted that during the period of time that the Defendant was on bond pending trial, the Defendant had been arrested and charged with another crime. It was clearly appropriate for the trial court to consider this conduct by the Defendant in assessing whether to revoke the Defendant's bond if he opted for the continuance.

Furthermore, although both the Defendant and defense counsel testified that they had difficulty communicating, the trial court found that this was due to the Defendant's willful refusal to cooperate with his lawyers. As the post-conviction judge concluded in his written order denying post-conviction relief, "The defendant apparently wanted the Court to use the Post Conviction [Procedure] Act to relieve him of his failure to consider settlement or assist in trial preparation. The Post Conviction [Procedure] Act was not designed for this purpose nor can the defendant take advantage out of his own folly."

Nor do we conclude that the Defendant received ineffective representation at trial. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn.1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695.

This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

At the post-conviction hearing, defense counsel testified that they had thoroughly investigated the Defendant's case, despite the Defendant's lack of cooperation. They stated that they were unable to find any witnesses who could help the Defendant's case. They also explained that because of the Defendant's statement to police, in which he admitted his involvement in the crime, the Defendant was left without a defense. Finally, they testified that they advised the Defendant not to testify because of his statement to police and because they believed he would not make an effective witness.

The Defendant's trial attorneys made reasonable strategic decisions in this case, which we may not second-guess on appeal. See Hellard, 629 S.W.2d at 9. We conclude that the services rendered by defense counsel were well "within the range of competence demanded of attorneys in criminal cases." Baxter, 523 S.W.2d at 936. The Defendant's complaints are rooted in his own failure to assist his attorneys in preparing for trial. Furthermore, even assuming that defense counsel were ineffective in this case, the Defendant points to no prejudice resulting from their alleged ineffectiveness. The Defendant offers no evidence that would have assisted him at trial. Moreover, the State presented extensive evidence to support the jury's finding of guilt, including testimony from others involved in the crime that the Defendant actually fired the gun, killing the victim. We therefore find no "reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the [Defendant's] guilt." Strickland, 466 U.S. at 695.

For the foregoing reasons, the judgment of the post-conviction court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE