**STATE of Tennessee, Appellee,**

v.

**Allan James ZYLA, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 5, 1981.

Permission to Appeal Denied by Supreme Court Feb. 22, 1982.

Guy T. Wilkinson, Camden, Marvin P. Morton, Jr., Paris, for appellant.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Theodore H. Neumann, Clayburn Peeples, Asst. Dist. Attys. Gen., Trenton, for appellee.

## OPINION

TATUM, Judge.

In four indictments, the defendant Allan James Zyla, was charged with grand larceny, receiving stolen property, and concealing stolen property. He was found guilty of receiving stolen property as charged in one count of one of the indictments (No. 10494) and was sentenced to serve not less than 3 years nor more than 3 years in the State penitentiary. The jury was unable to reach a verdict in the other three cases and mistrials were declared. On this appeal, he assigns error that he was denied effective assistance of counsel when the trial court refused to allow him new counsel and a continuance. He also says that his extrajudicial statement was admitted into evidence in violation of his State and Federal Constitutional rights and that the evidence was not sufficient to sustain the jury's verdict. We find these issues to be without merit and therefore affirm the judgment of conviction.

■ We first consider the issue testing the sufficiency of the evidence. The defendant was convicted of receiving a large quantity of guns that had been stolen from Western Auto Store in Paris, Tennessee. In February, 1980, the store was burglarized and approximately 70 to 75 guns were stolen. In January and February, 1980, two pistols were stolen from Uncle Lee's Sporting Goods in Paris and one pistol was stolen from the Wal-Mart Store in Paris.

Charles Gillespie testified that he had stolen the guns from these stores and sold about 60 of them to the defendant for a small fraction of their value. According to Gillespie, he informed the defendant that the guns were stolen in Chicago, Illinois. Approximately 6 separate sales were made to the defendant.

After Gillespie was arrested for the theft of the guns, he informed officers that some of the guns were at Bonnie and Clyde's Beer Tavern, which was owned by the defendant. Officers went to the beer tavern and obtained permission from the defendant to search for the guns. More than 30 of the stolen guns were recovered from the defendant's possession.

After the defendant's arrest, he gave the police a statement in which he admitted buying the guns from Gillespie and that he "understood some of them might have been stolen." The defendant also admitted that he sold some of the guns that he bought from Gillespie.

The defendant testified that he was a collector of guns. He stated that Gillespie had told him that the guns belonged to Gillespie's father-in-law, who was a police officer in Chicago, Illinois. He estimated that 29 guns that he had purchased from Gillespie the day of his arrest were worth approximately $2,000 and he paid Gillespie $950 for them. The defendant testified that prior to this purchase, the owner of Western Auto Store came to him and told him that he would pay $100 for each stolen gun and would ask no questions or report the theft to the police. He told the Western Auto Store owner that he did not have any of the guns and he lied to the store owner because he did not want to get further involved and because the store owner was attempting to recover the guns illegally. From this conversation, the defendant "presumed" that he (the defendant) had been purchasing stolen guns from Gillespie. More than a week after the store owner's visit, the defendant purchased the additional guns from Gillespie.

The defendant's wife testified that Gillespie had been selling the defendant guns for two or three months. On the evening of the defendant's arrest, the defendant pur-

chased the last group of guns from Gillespie. A few minutes before the officers arrived, she noticed a "true value" sticker on the bottom of a gun box which indicated to her that the guns were from Western Auto. She pointed this out to the defendant who replied that Gillespie "better not have brought me no stolen guns." Both the defendant and his wife testified that a police officer told the defendant that there would be no charges brought against him if he would cooperate. This was denied by the police officer and a contrary statement was made by the defendant in the taped statement that he gave to the policemen after his arrest.

The evidence of the defendant's guilt is overwhelming. It meets the standard of Rule 13(e), T.R.A.P. and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ In another issue for review, the defendant says "that his statement was admitted in violation of his Tennessee and United States constitutional rights." No pretrial motion to suppress this evidence was filed and no objection was made at trial. The issue was first raised on the motion for a new trial. The failure to file a pretrial motion to suppress constitutes a waiver unless good cause for the failure to raise the matter pretrial is timely shown. Rule 12(f), T.R.A.P.; *Feagins v. State*, 596 S.W.2d 108, 109–110 (Tenn.Cr.App.1979). The attorney who represents the defendant on appeal and who filed the motion for a new trial is not the same attorney who represented the defendant at trial. The trial attorney did not testify at a hearing on the motion for a new trial and his reason for not filing a pretrial motion is not expressly revealed in the record. However, we note that the evidence is undisputed that the guns were found pursuant to a valid consent by the defendant to search his premises. His defense was not based upon the theory that he did not possess the guns but on the proposition that he did not know they were stolen. In any event, since the record reflects that no pretrial motion was filed or any reason given for the failure to file, this issue is without merit.

Finally, the defendant complains of the refusal of the trial judge to grant his request, made on the day of the trial, to permit him to discharge his retained attorney and grant him a continuance to obtain the services of a second retained attorney. The defendant was indicted on March 17, 1980 and appeared at his arraignment on March 24, 1980 with retained counsel. On March 24, 1980, the defendant entered a plea of not guilty and the trial court announced a trial date of July 21, 1980. The defendant was present when the trial date was announced.

On July 21, 1980, the defendant appeared in court with his retained counsel and announced through counsel that he desired to discharge counsel because counsel had not given him sufficient time to prepare for trial. The defendant had no substitute counsel present in court. Obviously, the granting of this request would have necessitated a lengthy continuance.

■ A motion by a criminal defendant for a continuance of the trial until his retained counsel can be present is directed to the sound discretion of the trial court. *Ungar v. Sarafite*, 376 U.S. 575, 589–590, 84 S.Ct. 841, 849–50, 11 L.Ed.2d 921 (1964); *Giacalone v. Lucas*, 445 F.2d 1238 (6th Cir. 1971); *State v. Green*, 613 S.W.2d 229 (Tenn.Cr.App.1980).

■ The defendant insists that his rights under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Constitution of Tennessee, which guarantees the right of effective assistance of counsel, was violated.

In *United States v. Burton*, 584 F.2d 485, 489, 490 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34, the court held:

"Yet, the right to retain counsel of one's own choice is not absolute. The right 'cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' The public

has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force."

\*  \*  \*  \*  \*  \*

"We recognize that the right to choice of counsel devolves not only from the due process clause of the Fifth Amendment but also from the more stringent and overlapping standards of the Sixth Amendment. This, however, does not alter the fact that the determination of whether the defendant's right to select his counsel was protected depends upon the circumstances of the particular case. Once a fair and reasonable initial opportunity to retain counsel has been provided, and adequate counsel obtained, the court, mindful of the accused's interest in having counsel in whom he has confidence, is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case."

Although the defendant had been informed four months before trial of the trial date, he did not inform the trial court of his desire to obtain new counsel until the morning of the trial. The defendant did not come into court with new counsel of his choice. He stated that he became dissatisfied with counsel's service some 4 days before trial when he received a letter from counsel reminding him of the trial date. We do not find that the trial judge abused his discretion in insisting that the previously selected counsel of the defendant continue to represent him and denying a continuance for the procurement of new counsel and for preparations for trial.

■ The State points out that the minutes of the court state that the defendant was convicted of both receiving and concealing stolen property. The transcript states that the jury verdict found him guilty of only receiving stolen property. This conflict is controlled by the transcript. *Farmer v. State*, 574 S.W.2d 49 (Tenn.Cr.

App.1978). The judgment of the trial court, as it appears on the minutes, is corrected to reflect a conviction of receiving stolen property only.

As corrected, the judgment of the trial court is affirmed.

WALKER, P.J., and CORNELIUS, J., concur.