IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1996 SESSION

FILED

August 22, 1996

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | #01C01-9511-CR-00360 |
| APPELLEE, | * | WILSON COUNTY |
| VS. | * | Hon. J.O. Bond, Judge |
| TONY BARRETT, | * | (Community Corrections Revocation) |
| APPELLANT. | * | |

For the Appellant:

Comer L. Donnell
District Public Defender

Howard L. Chambers
Asst. District Public Defender
213 N. Cumberland Street
Lebanon, TN 37087

For the Appellee:

Charles W. Burson
Attorney General & Reporter
450 James Robertson Parkway
Nashville, TN 37243-0493

Cyril V. Fraser
Asst. Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Tom P. Thompson, Jr.
District Attorney General

David Durham
Asst. District Attorney General
111 Cherry Street
Lebanon, TN 37087-3609

OPINION FILED: _____

REVERSED AND REMANDED

William M. Barker, Judge

**OPINION**

The appellant, Tony Barrett, appeals from the Wilson County Criminal Court's judgment revoking his community corrections sentence.[1] He contends that the trial court erred not only in revoking the sentence but also in resentencing him to an excessive term. We agree that the trial court committed reversible error. The case is remanded for resentencing in accordance with this opinion.

In May of 1992, the appellant entered guilty pleas to two counts of conspiracy to distribute cocaine, a class C felony, one count of sale of a counterfeit controlled substance, a class E felony, and three counts of possession of marijuana, a class A misdemeanor. For the conspiracy convictions, the appellant was sentenced to three years; six months of the sentences were to be served in the county jail and the balance was to be served on supervised probation. For the counterfeit controlled substance conviction, the appellant was sentenced to two years of supervised probation. For each of the possession of marijuana convictions, the appellant was sentenced to eleven months and twenty nine days of supervised probation.

The sentence for the sale of a counterfeit controlled substance conviction was to run consecutively to the sentences for the conspiracy convictions; the remaining sentences were to run concurrently. Thus, the effective sentence was five years: six months to be served in the county jail and the balance to be served on supervised probation.

On March 27, 1995, a warrant was issued seeking the revocation of the appellant's community corrections sentence. At the revocation hearing, Francis Hemontoler, a community corrections officer, testified that the appellant had been placed

---

[1] The parties have referred to the appellant as "Anthony Dale Barrett." The indictment refers to the appellant as "Tony Barrett." This court's policy is to use the name charged in the indictment.

in the community corrections program on May 14, 1992. The revocation warrant was issued because the appellant had tested positive for marijuana and had failed to report his arrests for two counts of assault. Hemontoler testified that the appellant had been paying $50 a month toward his court costs and fines, and that he still owed $5800 in fines.

David Vincent Ashby testified that in December of 1994, he was visiting Tracy Westmoreland, the appellant's former girlfriend, when the appellant arrived. An altercation ensued. The appellant threatened "to kill" Ashby and tried to get in Ashby's car. The police arrived and the appellant was arrested.[2]

Tracy Westmoreland testified that she had dated the appellant for three years and that the couple had a daughter together. Westmoreland testified that the appellant had a history of physically abusing her. In December of 1994, the appellant showed up at her house and wanted to talk. David Ashby was also present. The appellant followed Westmoreland around the house; when she tried to call the police, the appellant hung up the phone. At one point, the appellant grabbed a knife and tried to cut his own wrists. Police eventually arrived and the appellant was arrested.

Westmoreland described a second incident that occurred at her house in January or February of 1995, again with David Ashby present. The appellant "trapped" Westmoreland inside of Ashby's car, choked her, and spit on her. When she slapped the appellant, he started punching her. Westmoreland called the police after she got to work.[3]

The appellant testified that he had not used marijuana or any other controlled substance. He believed that he tested positive for marijuana because he had been riding

---

[2] According to the community corrections officer, the appellant was arrested for this assault on December 12, 1994.

[3] The community corrections officer testified that the appellant was arrested for this assault on March 7, 1995.

to work with someone who was smoking marijuana. He realized that the explanation "sound[ed] bogus."

The appellant denied that he ever physically abused Tracy Westmoreland. In December of 1994, he went to Westmoreland's home to visit his daughter. He argued with Westmoreland, but he did not strike her. He denied threatening to kill David Ashby but admitted threatening to "kick his ass." During the second incident, the appellant was picking up his daughter at Westmoreland's home when an argument ensued. Westmoreland slapped him and he slapped her back. He denied choking, punching, or kicking her. He acknowledged that he was later convicted of assault for this incident, and that he was sentenced to eleven months and twenty-nine days probation.

The appellant testified that he had enrolled in a domestic violence program to seek help. He also was seeing a psychologist and taking medication for manic depression. Geraldine Griffin, the appellant's grandmother, testified that she was with the appellant at Westmoreland's home in December of 1994. She saw the appellant try to put his arms around Tracy Westmoreland. Griffin also testified that she knew the appellant was going to counseling. Judy Jarrett, the appellant's mother, testified that the appellant had been seeing a psychologist since December of 1994. She thought the appellant was making improvement.

The trial court revoked the alternative sentence based on the appellant's behavior toward Tracy Westmoreland and David Ashby and his failure to pay fines in a more timely fashion. The court increased the appellant's sentence for one of the conspiracy convictions from three years to the maximum of six years. The sentence was still to run consecutively to the sentence for sale of a counterfeit controlled substance. The appellant was to serve one year in the county jail, and the balance, now eight years, was to be served on supervised probation.

4

**I**

The appellant contends that the trial court erred in revoking his community corrections sentence. He states that "considering his good work record, his regular payment of fines, his regular reporting to the probation officer, his attendance of counseling sessions, and the circumstances surrounding the charges against him, his conduct was not sufficient justification for revocation." The State maintains that the evidence was sufficient in this respect.

In a revocation proceeding, the State carries the burden of establishing the violation by a preponderance of the evidence. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court has the discretion to revoke the community corrections sentence upon a finding that the defendant has violated the conditions of the agreement; the trial court may then order the defendant to serve his sentence in confinement. Id. Before a trial court may revoke a community corrections sentence, the record must contain sufficient evidence to permit the court to make an intelligent and conscientious decision. Id. In reviewing a trial court's determination, we may reverse only if "the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions . . . has occurred." Id.

Here, the revocation warrants charged two violations: testing positive for marijuana and failing to report two arrests for assault. The evidence in the record supported both. The appellant has not shown that the trial court erred in this regard.

**II**

The appellant contends that the trial court erred in imposing an excessive sentence. He argues that the error was compounded by confusion as to whether he was on supervised probation or community corrections when the revocation warrants were issued. The appellant states on appeal that "it appears [he] must have been placed on

5

Community Corrections at some point since the violation warrant ... was issued by a Community Corrections officer." He notes, however, that "there is no order in the record placing [him] on Community Corrections." The State concedes that there is no reference to a community corrections sentence in the judgments of conviction, but it maintains that the trial court properly resentenced the appellant.

The question of whether the appellant was serving probation or community corrections is crucial to the determination of his sentence upon revocation. "If the trial judge should find that the defendant has violated the conditions of his probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of [the] court, to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered...." Tenn. Code Ann. § 40-35-311(d)(1995 Supp.). In other words, when a court revokes probation, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension, and shall be executed accordingly...." Tenn. Code Ann. § 40-35-310 (1990 Repl.).

By contrast, when a trial court revokes a community corrections sentence, the court has the authority to resentence the defendant:

> The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant ..., and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4)(1995 Supp.). The purpose of this statute "is to permit a trial court to impose a new sentence if the nature, circumstances, and frequency of the accused's violations warrant a different type of alternative sentence or incarceration." State v. John Eric Lipscomb, No. 01-C-01-9506-CR-00185 (Tenn. Crim. App., Nashville, Feb. 13, 1996). However, "the provisions of the statute do not permit a trial court to

6

arbitrarily establish the length of the new sentences." Id. slip op. at 2. Instead, resentencing after the revocation of a community corrections sentence must be in accordance with the Tennessee Criminal Sentencing Reform Act of 1989. See State v. Taylor, 744 S.W.2d 919, 920 (Tenn. Crim. App. 1987)(Sentencing Reform Act and community corrections act in pari materia).

As a result, when a trial court increases the length of the original sentence after revoking a community corrections sentence, the court must conduct a sentencing hearing pursuant to the Sentencing Act. Tenn. Code Ann. §§ 40-35-209(a) & -210(a)-(e); see also State v. Keith F. Batts, No. 01-C-01-9210-CR-00326 (Tenn. Crim. App., Feb. 18, 1993, Nashville). The court must state on the record its reasons for imposing a new sentence, including what enhancement and mitigating factors were supported by the evidence. Tenn. Code Ann. § 40-35-210(f) & (g); see Tenn. Code Ann. §§ 40-35-113 & -114. Moreover the court must indicate the "specific findings of fact upon which application of the sentencing principles was based." Tenn. Code Ann. § 40-35-209(c). The new sentence must be "based on evidence in the record of the trial, the sentencing hearing, the presentence report, and the record of prior felony convictions filed by the district attorney ...." Tenn. Code Ann. § 40-35-210(g). These provisions are mandatory. See State v. Gauldin, 737 S.W.2d 798 (Tenn. Crim. App. 1987).

Thus, whether the appellant was on supervised probation as the judgments reflect, or in a community corrections program as the parties seemed to agree, the trial court's actions were erroneous. Upon revocation of probation, the original sentence imposed is in effect. Tenn. Code Ann. §§ 40-35-310 & -311. Upon revocation of community corrections, the trial court must resentence a defendant in accordance with the principles described in this opinion.

Accordingly, we remand the case to the trial court for a new sentencing hearing. In so doing, we note that the trial court must first determine the form of alternative sentencing the appellant had been serving. Although the judgments reflect probation, the transcript of the original sentencing hearing is not in the record. It has generally been held that where a conflict exists between the court's minutes and the transcript, the transcript governs. State v. Zyla, 628 S.W.2d 39 (Tenn. Crim. App. 1991); State v. Roscoe C. Smith, No. 01C01-9502-CR-00031 (Tenn. Crim. App., Nashville, Oct. 12, 1995). In any event, after making this determination, the trial court must then follow the statutory procedures outlined herein.

_____
William M. Barker, Judge

_____
John H. Peay, Judge

_____
David G. Hayes, Judge