# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### February 2, 2010 Session

## STATE OF TENNESSEE v. DWAYNE HARDY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-06152     James C. Beasley, Jr., Judge**

---

**No. W2009-01366-CCA-R3-CD  - Filed July 21, 2010**

---

In April 2009, a Shelby County jury convicted the defendant, Dwayne Hardy, of (1) especially aggravated kidnapping, a Class A felony, (2) aggravated assault, a Class C felony, and (3) aggravated robbery, a Class B felony. The trial court sentenced the defendant as a repeat violent offender to life without parole for especially aggravated kidnapping. The trial court further sentenced the defendant as a career offender to fifteen years for aggravated assault and thirty years for aggravated robbery. The court ordered the defendant to serve the sentences consecutively in the Tennessee Department of Correction. On appeal, the defendant argues that (1) the evidence was insufficient to support his especially aggravated kidnapping conviction, and (2) the trial court erred by admitting evidence that the police found in a garbage can. Following our review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender, and Barry W. Kuhn, Assistant Public Defender, (on appeal) and Michael Johnson, Assistant Public Defender, (at trial), Memphis, Tennessee, for the appellant, Dwayne Hardy.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela Fleming and Ray Lapone, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### Background

In September 2008, a Shelby County grand jury indicted the defendant on one count of especially aggravated kidnapping, a Class A felony, and two counts of aggravated robbery, Class B felonies. The parties presented the following evidence at the March 30 to April 1, 2009 trial.

Rebekah Vaughn testified that on November 21, 2007, she and her two-year-old son went to Overton Park to meet her cousin, Jennifer Bartram, and Ms. Bartram's two-year-old daughter. Ms. Vaughn said that she drove her Jeep to the park, and Ms. Bartram drove her black Mazda 626, which Ms. Vaughn had recently sold to Ms. Bartram. Ms. Vaughn planned to give Ms. Bartram the title to the Mazda while they were at the park. Ms. Vaughn testified that while she was putting her son in his car seat, the defendant approached her and her cousin from behind with a knife and demanded their purses and keys. Ms. Vaughn testified that the defendant told them, "'[D]on't make a scene.'" She said that when they hesitated, the defendant "grabbed [Ms. Bartram's] child . . . by the shoulder, pulled [her] towards [him], [and] had the knife on her neck." Ms. Vaughn said that the defendant told them to hurry up, and Ms. Bartram "was screaming . . . trying to . . . throw him the purse, it seemed like. [She] wanted her child . . . ." Ms. Vaughn was trying to unhook her keys from her purse so that she could give the defendant her purse. Ms. Bartram asked the defendant which keys he wanted because they had two cars. The defendant indicated that he wanted the keys to the Mazda. Ms. Bartram gave him the keys, and he released her daughter. Ms. Vaughn said the defendant drove away in the Mazda.

Ms. Vaughn further testified that she, her son, Ms. Bartram, and her daughter got into Ms. Vaughn's car and followed the defendant out of the park. She said that they "lost him on Jackson Avenue," so they pulled into a restaurant. Someone called the police for them. The police came to the restaurant, and they told them what happened. On November 23, 2007, Ms. Vaughn went to the robbery bureau at 201 Poplar Avenue, and investigators showed her a photospread. She identified a photograph of the defendant and gave a statement that he was the person who robbed her. Ms. Vaughn testified that she received some of her property back, including her EBT card, her husband's debit card, her business cards, and her social security card.

On cross-examination, Ms. Vaughn testified that she did not notice the defendant until he was within a few feet of her. She said that a very brief period of time passed between the point she noticed him and when he grabbed Ms. Bartram's daughter. Ms. Vaughn agreed that she described the perpetrator as a black man with a dark complexion, who was wearing a hooded jacket. She said that the hood was up, and she could see the man's face but not his ears or the top of his head. Ms. Vaughn agreed that, among the men in the photospread, she

chose the man with the lightest complexion. Ms. Vaughn further agreed that the knife appeared to be a steak knife with a black handle.

Jennifer Bartram testified that she met her cousin, Rebekah Vaughn, at Overton Park in the afternoon hours of November 21, 2007. Ms. Bartram's two-year-old daughter and Ms. Vaughn's two-year-old son were with them. They went to the park so that their children could play together and Ms. Vaughn could give Ms. Bartram the title to the Mazda 626, which Ms. Bartram had recently purchased from her. She said that they were leaving the park at 4:45 p.m. when the defendant approached them with a knife. He held the knife to Ms. Vaughn's side, near her waist. Ms. Bartram testified that the knife was touching Ms. Vaughn. She said that the defendant told them, "[D]on't make a scene." Ms. Bartram said that Ms. Vaughn "unclasped her keys from the strap of her purse and handed him her purse." The defendant demanded that they give him the car. As Ms. Bartram was trying to remove personal items from her purse, the defendant grabbed her daughter by the collar of her shirt and pulled her approximately five feet away, holding the knife to her throat. Ms. Bartram said that her daughter began crying but did not make a sound besides saying "mama." Ms. Bartram threw her purse at the defendant. She recalled that Ms. Vaughn "gained control back" of her daughter, and the defendant "snatched the keys out of the door" of the Mazda, got in the car, and drove away. Ms. Bartram was unsure whether the defendant let go of her daughter or if Ms. Vaughn grabbed her. Once the defendant drove away, Ms. Vaughn told them to get in her vehicle, and Ms. Bartram told Ms. Vaughn to follow him. They followed him for five to six minutes until he made a turn off of Jackson Avenue. They could not call the police themselves because Ms. Vaughn's cell phone was in her purse, which she had given to the defendant, and Ms. Bartram's phone was in the Mazda. They went into a restaurant on Jackson Avenue, and someone called the police for them. When the police arrived, she was able to give them the vehicle identification number of her Mazda because she had the title with her. She also gave them a full description of the vehicle and the tag number. Ms. Bartram went to the robbery bureau at 201 Poplar Avenue and gave the police a full statement and a description of the robber. She identified the defendant from a photospread as the man who robbed her. The police returned her car to her on November 24, 2007. She said that her possessions were missing from the car, including her daughter's car seat, toys, shoes, a book, aprons, and a ticket issued to her.

Memphis Police Officer Anthony Russell testified that on November 23, 2007, he received information during roll call that a perpetrator had carjacked a black Mazda 626 and injured a child. During his patrol that day, he noticed a Mazda 626 at the intersection of Chelsea Avenue and Warford Street. The Mazda continued on Chelsea Avenue, and Officer Russell turned his car around to follow it. He observed that the tag matched the number given during roll call, and he contacted the dispatcher to confirm that it was the same vehicle. The dispatcher confirmed that the vehicle was stolen. The driver of the vehicle stopped in

a driveway at the corner of Shannon Avenue and Oriole Street and remained in the vehicle. Officer Russell exited his car with his weapon drawn and commanded the driver to exit the vehicle. Officer Russell explained that he drew his weapon because the situation was a felony in progress. The driver exited the vehicle after approximately one minute and laid down on the ground. At that time, a second police officer, Officer Miller, arrived. Officer Miller handcuffed the driver. They searched the driver and found a Tennessee driver's license issued to the defendant, an EBT card in Rebekah Vaughn's name, a debit card issued to Mark Vaughn, a lottery ticket, and a Mapco gift card.

Officer Russell further testified that he observed a child's car seat next to a garbage can, which was close to the driveway where the driver stopped. Officer Russell said that the car seat appeared "usable." He opened the garbage can and found "several items that linked back to the car" including "some work aprons, some items to a Jennifer, more Rebekah Vaughn stuff[,] and . . . little kids shoes and toys." Officer Russell said that a crime scene investigator collected the items from the garbage can, and the Safe Streets Task Force ordered that the car be towed to the city lot for crime scene investigators. Officer Russell transported the driver to the robbery bureau at 201 Poplar Avenue. He testified that he could not identify the defendant as the driver.

On cross-examination, Officer Russell admitted that during the preliminary hearing, he identified a person other than the defendant as the driver. He said that the garbage can was on the curb, approximately three feet from where the driver parked the car.

Memphis Police Officer Eric Hutchison testified that in November 2007 he was assigned to the Safe Streets Task Force. He was the case officer coordinating the investigation into the robbery at Overton Park on November 21, 2007. Officer Hutchison testified that he was present when Officer Russell brought the defendant into the robbery office. After the defendant was in custody, Officer Hutchison contacted Rebekah Vaughn and Jennifer Bartram. They came into the office, and he spoke with Ms. Vaughn, who identified the defendant in a photospread. Sergeant James Taylor showed a photospread to Ms. Bartram, who also identified the defendant. Officer Hutchison testified that he authorized the return of the Mazda to Ms. Bartram and the return of various personal effects to Ms. Bartram and Ms. Vaughn.

The state recalled Rebekah Vaughn. She testified that she identified the defendant during the preliminary hearing as the man who robbed her and Ms. Bartram.

Following the close of proof and deliberations, the jury returned its verdicts, finding the defendant guilty of especially aggravated kidnapping, a Class A felony, the lesser included offense of aggravated assault, a Class C felony, and aggravated robbery, a Class B

felony. The trial court sentenced the defendant as a repeat violent offender to life without parole for the especially aggravated kidnapping conviction. The court sentenced him as a career offender to fifteen years for aggravated assault and thirty years for aggravated robbery. The court ordered the defendant to serve his sentences consecutively in the Tennessee Department of Correction.

**Analysis**

*I. Sufficiency of the Evidence and Due Process*

For his first issue, the defendant contends that the evidence was insufficient to support a separate conviction for especially aggravated kidnapping when he was also convicted of aggravated robbery. Specifically, he argues that the assault on Ms. Bartram's daughter was necessary to commit the robbery of Ms. Bartram and was not a separate offense. The state responds that the kidnapping of Ms. Bartram's daughter was beyond what was necessary to accomplish the robbery and increased the risk of harm to the victim. We agree with the state.

*A. Sufficiency*

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558; *Tuggle*, 639 S.W.2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

Initially, we look to whether the evidence was sufficient to support the especially aggravated kidnapping conviction apart from due process concerns. *See State v. Carvin*

*Lamont Thomas*, No. M2002-01716-CCA-R3-CD, 2003 WL 21233512, at \*3 (Tenn. Crim. App., at Nashville, May 28, 2003), *perm. to appeal denied* (Tenn. Oct. 27, 2003).  To sustain the defendant's conviction for especially aggravated kidnapping, the state was required to prove beyond a reasonable doubt that the defendant falsely imprisoned the victim either (1) by use of a deadly weapon or an article fashioned to lead the victim to reasonably believe it to be a deadly weapon; (2) when the victim was under thirteen years old; (3) where committed to holding the victim for ransom, as a shield, or as a hostage; or (4) where the victim suffered serious bodily injury. Tenn. Code Ann. § 39-13-305(a). False imprisonment is "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty."  Tenn. Code Ann. § 39-13-302(a).  In this case, the evidence, viewed in the light most favorable to the state, showed that the defendant confined Ms. Bartram's two-year-old daughter by moving her approximately five feet and holding a knife to her throat.  It is immaterial that the confinement was brief and that the defendant only moved her a few feet away. *See Thomas*, 2003 WL 21233512, at \*4.  The facts are sufficient to show that the defendant knowingly confined a two-year-old child by use of a deadly weapon.  Therefore, the evidence supports the defendant's conviction for especially aggravated kidnapping, independent of due process concerns.

### *B. Due Process*

The Tennessee Supreme Court, in *State v. Anthony*, held that dual convictions for kidnapping and an accompanying felony, which stemmed from the same criminal conduct, violated due process when "the confinement, movement, or detention [was] essentially incidental to the accompanying felony."  817 S.W.2d 299, 306 (Tenn. 1991), *abrogated by State v. Dixon,* 957 S.W.2d 532, 535 (Tenn. 1997), *as recognized by State v. Richardson*, 251 S.W.3d 438, 443 (Tenn. 2008).  In place of *Anthony*'s "essentially incidental" analysis, the supreme court formulated a two-prong analysis to determine whether the evidence supported a separate conviction for kidnapping.  *See Dixon*, 957 S.W.2d at 535; *Richardson*, 251 S.W.3d at 443.  First, we must inquire "whether the movement or confinement was beyond that necessary to consummate the act of [the accompanying felony]."  *Dixon*, 957 S.W.2d at 535.  This is a fact-intensive, threshold determination.  *Richardson*, 251 S.W.3d at 443.  If the movement or confinement was beyond that necessary, then we must ask "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm."  *Dixon*, 957 S.W.2d at 535.  If we answer the second prong in the affirmative, then the dual convictions for kidnapping and the accompanying felony do not violate due process. *See Richardson*, 251 S.W.3d at 442-43.  The determination of whether a separate kidnapping conviction violates due process is a question of law, which we review *de novo* with no presumption of correctness.  *Richardson*, 251 S.W.3d at 442.

As for the first prong, we must determine whether the movement and confinement of Ms. Bartram's daughter was beyond that necessary to consummate the aggravated robbery of Ms. Bartram. Aggravated robbery, as pertinent to this case, is the intentional or knowing theft of property from the person of another accomplished by use of a deadly weapon. Tenn. Code Ann. §§ 39-13-401, -402. The evidence, viewed in the light most favorable to the state, showed that the defendant approached the victims brandishing a steak knife, and Ms. Bartram had begun the process of handing over her purse when the defendant grabbed her two-year-old daughter, moving her approximately five feet away and holding the knife to her neck. The defendant argues that the assault on Ms. Bartram's daughter was the threat which caused Ms. Bartram to relinquish her possessions. We respectfully disagree. In our view, the movement and detention of Ms. Bartram's daughter were not necessary to accomplish the aggravated robbery because (1) Ms. Bartram had already begun to hand over her purse at the command of the knife-wielding defendant, and (2) the defendant could not reasonably have viewed the two-year-old as a threat to the consummation of the robbery. Therefore , the confinement of her daughter allowed the facts of this case to meet the threshold determination of the *Dixon* test.

In order to pass constitutional muster, the separate kidnapping conviction must also meet the second part of the *Dixon* analysis. The second prong of the *Dixon* test requires us to determine "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Dixon*, 957 S.W.2d at 535. The defendant's confinement of the two-year-old greatly increased her risk of harm because he accomplished it by holding a knife to her throat. The defendant contends that the relevant victim under the *Dixon* analysis is the robbery victim rather than the kidnapping victim, and he argues that the confinement of Ms. Bartram's daughter did not increase the risk of harm to Ms. Bartram. Assuming, *arguendo*, that the defendant is correct that the relevant victim is the robbery victim, under these facts the confinement of the two-year-old created a significant danger, irrespective of which victim is relevant to the risk of harm factor. Having satisfied both prongs of the *Dixon* test, we conclude that the defendant's dual convictions for especially aggravated kidnapping and aggravated robbery did not violate his due process rights. He is without relief as to this issue.

## II. Admission of Evidence

The defendant argues, for the first time on appeal, that the trial court erred by admitting the evidence seized by the police from a garbage can. Specifically, he contends that the search and seizure of the evidence violated article I, section 7, of the Tennessee Constitution. Furthermore, he submits that his trial counsel preserved the issue by contemporaneously objecting to the evidentiary chain of custody. Alternatively, he requests that this court review the admission of the evidence for plain error.

We note that the defendant did not file a pretrial motion to suppress the evidence seized from the garbage can, nor did he make a contemporaneous objection based on a constitutional violation, nor did he argue that the search and seizure was unconstitutional in his motion for new trial. Tennessee Rule of Criminal Procedure 12 requires that parties file motions to suppress evidence prior to trial. Tenn. R. Crim. P. 12(b)(2)(C). Parties failing to comply with the rule waive the issue unless they show good cause. Tenn. R. Crim. P. 12(f); *see also State v. Zyla*, 628 S.W.2d 39, 41 (Tenn. Crim. App. 1981). The defendant has not provided any reason for failing to file a motion to suppress. Therefore, he has waived this issue on appeal. Tenn. R. Crim. P. 12; Tenn. R. App. P. 36(a). Furthermore, because the defendant may not change theories between the lower court and the appellate court, he has also waived the issue for failure to include it in his motion for new trial. *See* Tenn. R. App. P. 3(e)*; State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001). Finally, nothing in the record suggests that the defendant is entitled to plain error review. *See* Tenn. R. App. P. 3(e); Tenn. R. App. P. 36. We conclude that the defendant has waived this issue, and we decline to review it for plain error. The defendant is, therefore, without relief as to this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE

-8-