# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs August 22, 2012

## STATE OF TENNESSEE v. MARTIN J. McMURRAY

**Appeal from the Circuit Court for Sullivan County**
**No. S57975     Robert H. Montgomery, Judge**

---

**No. E2011-00720-CCA-R3-CD - Filed October 26, 2012**

---

The defendant, Martin J. McMurray, was convicted by a Sullivan County Circuit Court jury of driving a lawnmower while under the influence ("DUI"), a Class A misdemeanor; violation of an habitual traffic offender order ("HMVO"), a Class E felony; driving under the influence with a blood-alcohol concentration over .08% ("DUI *per se*"), a Class A misdemeanor; and DUI, sixth offense, a Class E felony. The trial court merged the DUI and DUI *per se* convictions into the DUI, sixth offense, conviction and sentenced the defendant to three years on that conviction. The trial court sentenced the defendant to three years for the HMVO conviction, to be served consecutively to the DUI, sixth offense, conviction for an effective sentence of six years in the Department of Correction as a Range II, multiple offender. The trial court further ordered that the sentences be served concurrently with a violation of probation in another case. On appeal, the defendant argues that: (1) the evidence is insufficient to sustain his convictions for DUI; (2) he received the ineffective assistance of counsel at trial and at the motion for new trial; (3) the trial court abused its discretion in denying his motion for a continuance; (4) the trial court imposed an excessive sentence; and (5) the trial court abused its discretion in denying his motion for recusal. After review, we affirm the judgments of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, J., joined. JAMES CURWOOD WITT, JR., J., concurred in results.

Sally A. Goade, Knoxville, Tennessee (on appeal); Richard A. Tate, Assistant Public Defender (at trial); and Ashley Daniel, Blountville, Tennessee (at motion for new trial hearing), for the appellant, Martin J. McMurray.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Brandon Haren, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The defendant's convictions stem from his driving a lawnmower, while intoxicated, on Harr Town Road in Sullivan County around 11:00 p.m. on April 9, 2010. At the defendant's trial, Joshua Ferguson, a former police officer with the Sullivan County Sheriff's Office, testified that he was working as a patrol deputy on April 9, 2010. Shortly before 11:00 p.m. that night, Ferguson was dispatched on a call regarding someone, possibly under the influence, driving a lawnmower down the middle of Harr Town Road. As he approached the location, Ferguson saw one headlight coming at him from the opposite direction and realized it was a lawnmower, driven by the defendant.

After initially driving past the defendant, Ferguson turned around and initiated the blue lights on his patrol car. He addressed the defendant over the P.A. several times in an attempt to get him to pull over and even blew his horn and used his siren, yet the defendant "failed to pull over." At one point, the defendant motioned for the officer to go around him. After being notified by dispatch that backup was en route, Ferguson "advised them to go slow; it was just a lawnmower, it wasn't a high-speed pursuit."

Once the defendant pulled over, Ferguson saw that there was "a little lawnmower trailer" being pulled behind the lawnmower. The trailer contained a guitar, a small toolbox, a battery charger, and "one or two empty beer cans." Ferguson also found a full, cold can of beer in the defendant's jacket pocket, which was the same brand as the empty beer cans in the trailer. Ferguson administered field sobriety tests to the defendant, and the defendant "did not perform well on those tests." Based on his observations of the defendant, Ferguson determined that the defendant was under the influence and that "he was not safe to operate a motor vehicle."

Ferguson then read the defendant the implied consent form and administered the Breathalyzer test. The results indicated a breath-alcohol content of .15, which was consistent with Ferguson's initial opinion that the defendant was intoxicated. Ferguson's patrol car was equipped with a video camera, and a recording was made of the traffic stop. The jury was shown the edited version of the video, which was entered into evidence.

On cross-examination, defense counsel questioned Ferguson concerning the specifics of the defendant's performance on the field sobriety tests. Defense counsel also questioned Ferguson concerning the defendant's attitude during their encounter, and Ferguson agreed that, in his report, he marked that the defendant's attitude was carefree and cocky, his speech was mumbled, and that he "[v]ery slightly . . . was swaying." Ferguson recalled that the defendant told him various stories as to what he was doing out on the lawnmower and to

-2-

whom it belonged. However, he acknowledged that the defendant told him the truth on several occasions that night. Ferguson recalled that the defendant was originally driving in the middle of the road but then moved over to the left side of the road upon Ferguson's car approaching. He estimated that the lawnmower was traveling two to three miles an hour.

A stipulation between the State and the defendant was read to the jury. It stated that, on the date of April 9, 2010, the defendant was considered an habitual traffic offender, prohibiting him from operating a motor vehicle on a public road.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence supporting his convictions for DUI, asserting that "[t]he State presented insufficient evidence for a reasonable factfinder to believe that the inference of 'under the influence' created by [his] breathalyzer test could be substantiated as a conclusion that he was under the influence beyond a reasonable doubt."

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A person is guilty of driving under the influence if he drives or is in physical control of an "automobile or other motor driven vehicle on any of the public roads and highways of the state, . . . while: (1) [u]nder the influence of any intoxicant . . .; or (2) [t]he alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08 %) or more." Tenn. Code Ann. § 55-10-401(a)(1), (2). Evidence that the defendant had a blood-alcohol concentration of .08% or higher at the time of the incident creates "a presumption that the defendant's ability to drive was sufficiently impaired thereby to constitute a violation of § 55-10-401(a)(1)." Id. § 55-10-408.

The defendant concedes that he was driving a motor driven vehicle on a public road and that the result of his Breathalyzer test showed an alcohol content of .15%, creating a presumption that he was under the influence. However, he asserts that the other evidence presented by the State did not support an inference that he was under the influence. He points to, among other things, Ferguson's testimony that he moved the lawnmower from the middle of the road when the patrol car approached and Ferguson's testimony regarding his performance on the field sobriety tests being inconsistent with that shown on the video of the stop.

We conclude that, in the light most favorable to the State, the evidence is sufficient for a rational trier of fact to find the defendant guilty of DUI under each of the alternative counts charged. The Breathalyzer test resulted in a reading of .15%, almost double the amount required to create a presumption of impaired driving ability. Ferguson testified that he had to request the defendant to pull over multiple times and that there were empty cans of beer in the trailer being pulled by the lawnmower and a full, cold can of the same brand in the defendant's pocket. Ferguson administered field sobriety tests to the defendant and felt that the defendant "did not perform well on those tests." Ferguson also noted that the defendant swayed "very slightly" while standing. Based on the totality of his observations of the defendant, including the defendant's performance on the field sobriety tests, Ferguson determined that the defendant was under the influence and that "he was not safe to operate a motor vehicle." This court has often found that an arresting officer's testimony alone is sufficient to support a defendant's conviction for driving under the influence of an intoxicant. See, e.g., State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993). Moreover, the jury was shown the video of the stop and was within its province to draw its

-4-

own inferences from the defendant's conduct and performance and, as is its prerogative, determined that the defendant was intoxicated. The evidence is sufficient to support the defendant's convictions for DUI.

## II. Ineffective Assistance of Counsel

The defendant was represented by two different attorneys in the proceedings below: one at trial and another one at the hearing on the motion for new trial. He argues that he received the ineffective assistance of counsel in two ways: (1) "the attorney-client relationship had broken down to the point where [t]rial [c]ounsel's ability to zealously advocate was compromised"; and (2) his new counsel "erroneously advised him against raising the issue of ineffective assistance at the hearing on the motion for new trial because it would preclude raising the issue in post-conviction proceedings."

To establish a claim of ineffective assistance of counsel, the defendant has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690,

and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999), "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

## A. Trial Counsel

The defendant argues that he received the ineffective assistance of trial counsel because counsel was clearly aware that he was dissatisfied, and he felt that counsel did not "want[] to work for his defense." He asserts that he was prejudiced by counsel's deficiencies because counsel could have made a more effective closing argument "regarding the rebuttable presumption of intoxication" had there been "greater attorney-client communication and trust."

The defendant has failed to prove that trial counsel rendered deficient performance or that any deficiency caused him prejudice. The defendant admits in his brief that "[i]t would be difficult to argue that trial counsel did not provide essentially competent services to [him] in the courtroom." His main complaint is that he was nevertheless dissatisfied with counsel's representation, explaining at the motion for new trial hearing that he felt that counsel "didn't even want to talk to [him]" and "felt like [counsel] was not trying to help [him] period." He also points to his unsuccessful attempt for a continuance the morning of trial to retain a new attorney as evidence of his dissatisfaction. However, a defendant's mere unhappiness does not equate to deficient performance by counsel. In its findings at the motion for new trial hearing, the trial court noted that:

> [Y]ou had certainly competent counsel, experienced counsel and that he provided in my opinion appropriate counsel for you during the trial. He was ready for trial. The proof in the case was overwhelming and so . . . the fact that he was with you as many times as he was in court . . . [and] he had adequate communication with you and appropriately represented you.

Upon review of the record before us, we conclude that the defendant has failed to show that trial counsel rendered deficient performance.

Moreover, the defendant has failed to show any prejudice. He asserts that "[t]hrough communication with his attorney and possibly through preparation of his own testimony,

[he] would have been able to develop a stronger rebuttal to the inference of being under the influence brought about by his breathalyzer test result." He acknowledges that "[t]his would not have prevented him from being found guilty of driving with a blood alcohol level of .08% or greater, but it may have prevented him from being found guilty of driving under the influence." He claims he was prejudiced because he "needlessly faced the potential of double jeopardy" if the alternative counts of driving under the influence were not merged. Here, the trial court merged the DUI and DUI *per se* convictions into the conviction for DUI, sixth offense, and entered judgment on that count. Thus, the defendant's claim of prejudice is entirely speculative, and he is not entitled to relief.

### B. Motion for New Trial Counsel

The defendant also argues that he received the ineffective assistance of counsel at the motion for new trial in that new counsel advised him against raising the issue of ineffective assistance of counsel in that motion because doing so would preclude raising the issue in post-conviction proceedings.

At the hearing on the motion for new trial, the trial court observed that new counsel had raised the issue of ineffective assistance of trial counsel in the motion for new trial. The court explained the possible consequence of not being able to raise the issue in a future post-conviction proceeding if the issue was raised and ruled upon in a motion for new trial. Addressing the defendant, the court said, "I'm not saying you don't want to raise it here. . . . I'm not giving you advice, I just want to make sure, though, that you and [new counsel] had talked about that issue." New counsel asked for an opportunity to talk to the defendant, and the court called a recess. After the recess, new counsel told the court that the defendant "understands that if you rule on it or hear evidence on it today then he cannot bring it up in the post-conviction relief and he would like to --." The court then interjected, "That's fine. Just sometimes that, it may be an issue, and I'm not saying it is, I just wanted to point it out." New counsel responded, "No, I appreciate it. Thank you."

The defendant then testified about his efforts to hire private counsel and obtain a continuance of his trial. On cross-examination, he testified in more detail about his efforts to obtain private counsel and also about trial counsel's representation of him. The defendant was then questioned by the court concerning what he thought trial counsel could have done differently.

As the preceding paragraphs demonstrate, the record is far from clear as to whether the defendant withdrew the issue from consideration, and the defendant and the State assert counter viewpoints. However, it appears that the trial court made findings relevant to trial counsel's representation, and we have elected to address trial counsel's effectiveness in the preceding section. Thus, the defendant is unable to prove any prejudice caused by any

alleged deficiency in new counsel's representation.

### III. Motion for Continuance

The defendant argues that the trial court abused its discretion by denying his motion for a continuance.

On the morning of trial, the defendant requested a continuance so he could retain new counsel who would need "a little bit of time to review the case." The court explained to the defendant that he had been represented by an appointed attorney for six months who had appeared in court with him eight times. Moreover, the court noted that the defendant had "been out of custody now for a month" and "had over 30 days to meet at will and find lawyers and do whatever [he] want[ed] to do with regard to getting ready for this case." The defendant countered that the reason it took him so long was because his mother had to take out money against her life insurance policy to help him hire the attorney, and he had to pay the bondsman. He complained to the court:

> I just don't understand why that, you know, I've had to go out here and put up my home and . . . dip into a life insurance policy to go and hire an attorney because I didn't feel like [trial counsel] was representing right. And now that I've done all this and I've spent $6,000, and now that you won't give me the opportunity to . . . have my lawyer, you know, to review this case and come in and try to represent me.

The court again explained that the defendant had been represented by the public defender's office for almost six months, the trial date had been set for three months, and counsel was ready to try the case. Accordingly, the trial court denied the motion for a continuance.

At the motion for new trial hearing, when asked what he would have wanted counsel to do differently, the defendant said that he wanted counsel to try to have the case dismissed when the State could not initially locate the arresting officer, but counsel said that he would not do that "because they would just turn around and re-indict [him]." In response, the State explained that there was a slight delay in bringing the indictment because the arresting officer had left the sheriff's office and entered the ministry, "so he had to locate his file and the video." The court noted that an officer typically did not come to court unless there was a trial date or a hearing on a motion and that the defendant was actually indicted within a month of his bind-over date. The court denied the defendant's motion for a new trial, finding that the defendant's case was not prejudiced by counsel's failure to move for a dismissal and noting that it would not have granted such motion had it been filed.

The defendant claims that the denial of a continuance resulted in his receiving the

ineffective assistance of counsel, although acknowledging that "the right to the counsel of one's choosing must be balanced against the requirements of the fair and proper administration of justice." State v. White, 114 S.W.3d 469, 475-76 (Tenn. 2003) (internal quotation and citation omitted).

The granting of a continuance lies within the sound discretion of the trial court, and we will not reverse that decision absent a showing of an abuse of discretion. State v. Schmeiderer, 319 S.W.3d 607, 617 (Tenn. 2010) (citing State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004)). "'An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted.'" Id. (quoting State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995)).

We cannot conclude that the trial court abused its discretion in denying the defendant's request for a continuance. This court addressed an analogous situation in State v. Zyla, 628 S.W.2d 39, 41 (Tenn. Crim. App. 1981), a case in which the defendant retained counsel, who appeared with him at his arraignment, but then moved for a continuance on the day of trial, four months later, so he could discharge his counsel and retain new counsel. The trial court denied the defendant's motion, and the defendant argued that his right to the effective assistance of counsel was violated. Id. In ruling on the issue, this court observed:

> In United States v. Burton, 584 F.2d 485, 489, 490 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069, 99 S. Ct. 837, 59 L. Ed. 2d 34, the court held:
>
> > "Yet, the right to retain counsel of one's own choice is not absolute. The right 'cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force."
>
> > "We recognize that the right to choice of counsel devolves not only from the due process clause of the Fifth Amendment but also from the more stringent and overlapping standards of the Sixth Amendment. This, however, does not alter the fact that the determination of whether the defendant's right to select his counsel was protected depends upon the circumstances of the particular case. Once a fair and reasonable initial opportunity to retain counsel has been provided, and

adequate counsel obtained, the court, mindful of the accused's interest in having counsel in whom he has confidence, is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case."

Id. at 41-42. This court then concluded that the trial court did not abuse its discretion in denying the motion to continue. Id. at 42. See also Jessie James Austin v. State, No. W2003-01312-CCA-R3-PC, 2004 WL 1533948, at *6-7 (Tenn. Crim. App. July 8, 2004) (concluding that the petitioner was not denied the effective assistance of counsel due to trial court's denial of his request for a continuance where he had four months from his arraignment to the day of trial to hire new counsel but waited until the night before his trial was to begin).

The evidence before the court was that counsel was prepared to represent the defendant at trial and indeed vigorously cross-examined the State's witness and argued on the defendant's behalf. There has been no showing that the defendant was denied a fair trial, or that the trial would have reasonably had a different result had the request been granted. The defendant is not entitled to relief on this issue.

## IV. Sentencing

The trial court conducted a sentencing hearing, at which the defendant first entered a plea of guilty to a violation of probation charge in a separate case. The defendant then testified that he had already served approximately 350 days in jail on his probation violation and DUI charge and that he had completed some drug and alcohol classes and GED refresher courses. He expressed interest in the court's placing him in a six-month residential rehabilitation program with the Salvation Army in Nashville. The defendant said that he was currently on disability for "bad back, bad hips and legs." He had investigated a vocational rehabilitation program that he wanted to join to gradually get off disability and "back into a job." He said that he had a supportive family who was willing to do whatever they could to help him.

The defendant acknowledged his history of DUI offenses and indicated that he was ready for things to change. He said that, when he was arrested on the present offenses, he had completed twenty-two and a half months of his probation and, during that time, had paid his fees as scheduled. He stated that he was convicted of DUI in 1996, but between that time and his present conviction, he was only convicted of one other DUI, which occurred in 2004.

-10-

Janet Burke, the defendant's sister, testified that she felt a drug and alcohol treatment program would assist the defendant. She believed the defendant had changed because, this time, he looked for rehabilitation services and pursued educational opportunities on his own initiative. She said that she would be willing to support and assist the defendant in his efforts to become sober.

The defendant and State also stipulated that the defendant's girlfriend and daughter were present in the courtroom, and both wanted the defendant to get help for his addiction.

In sentencing the defendant, the trial court first imposed a sentence of eleven months and twenty-nine days at seventy-five percent for the violation of probation and ordered that it be served concurrently to the sentences on the present charges. In determining the sentences for the present charges, the court found that three enhancement factors were applicable – that the defendant had a previous history of criminal convictions or criminal behavior in addition to that necessary to establish his range; that he had previously, on more than one occasion, failed to comply with the conditions of a sentence involving release into the community; and that he was on probation when he committed the present offenses. Tenn. Code Ann. § 40-35-114(1), (8), and (13). The trial court also discussed mitigating factors and noted that the defendant had taken some self-rehabilitative efforts. See id. § 40-35-113(13). The court determined that the enhancement factors outweighed the mitigating factor. The court found that the defendant was a Range II offender and sentenced him to three-year terms on the sixth offense DUI and HMVO convictions.

In determining that the defendant's sentences should be served consecutively, the trial court found that the defendant was an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(b)(2). The court also found that "an extended sentence is necessary to protect the public against further criminal conduct by the defendant." The court observed that the defendant "had several other kinds of time that he served significant sentences and failed to comply with being on probation or being on parole[.]" The court further found that "consecutive sentencing is reasonably related to the severity of the offenses committed[.]" In concluding that the defendant's sentences were to be served in confinement, the court found that "confinement is necessary to protect society by restraining a defendant with a long history of criminal conduct" and that "measures less restrictive than confinement have frequently as well as recently been applied unsuccessfully to the defendant." As such, the trial court imposed a sentence of six years to serve.

On appeal, the defendant argues that the trial court imposed an excessive sentence in that "it weighed facts used in proving the offense as enhancement and . . . it gave little weight to mitigating factors[.]" With regard to the enhancement of his sentence, he specifically asserts that "the trial court stressed the danger posed to the public [due to his] presence on the road that night with the lawnmower." It does not appear that the defendant

contests the trial court's imposition of consecutive sentences or a sentence of confinement.

Our supreme court explained in <u>State v. Bise</u>, __ S.W.3d __, 2012 WL 4380564, at *16 (Tenn. 2012), that, in reviewing a sentence imposed by a trial court, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Thus, the court added, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" to "ensure fair and consistent sentencing" and that the sentencing court place in the record, orally or in writing, the enhancement and mitigating factors which the court considered, if any, and the reasons for the sentence. <u>Id.</u> at n.41. Further, the court explained that misapplication of an enhancement or mitigating factor by a trial court does not necessarily require reversal:

> We hold, therefore, that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

<u>Id.</u> at *17.

Accordingly, the court adopted an abuse of discretion standard of review for sentences imposed by a trial court:

> We hold, therefore, that because the General Assembly, in an effort to bring the 1989 Act into compliance with <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, made advisory the minimum sentence that should be imposed and the enhancement and mitigating factors that might be considered, the 2005 amendments also effectively abrogated the de novo standard of appellate review. So as to comport with the holdings in <u>Booker</u>, <u>Rita</u>, and <u>Gall</u>, today we adopt an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.

<u>Id.</u>

In sentencing the defendant in <u>Bise</u>, the trial court gave consideration to the presentence report, which set out that the defendant had a prior conviction for public intoxication, and that "intoxication played a role in her convictions on each of the three counts"; that she "had failed to provide her son with appropriate parental guidance during

-12-

the episode that led to the convictions"; that she had "knowingly allowed stolen goods to be stored in her home for an extended period of time"; and that, based upon proof at the sentencing hearing of an "unusually high number" of burglaries in the county, there was a need for deterrence for crimes such as those committed by the defendant. Id. at *19. Additionally, the court reminded that "trial courts, 'familiar with their locale and having seen the evidence and the defendant, as well as possessing the benefit of experience in sentencing matters, should retain that discretion necessary to achieve all of the purposes of the [Sentencing] Act.'" Id. (citing State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986)). In summary, the court explained that "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at *20.

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in the Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is an offender whose record of criminal activity is extensive and the defendant is sentenced for an offense committed while on probation. Id. § 40-35-115(b)(2), (6). Additionally, if the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, see id. § 40-35-115(b)(4), the court must find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999).

In this matter, the trial court considered the statutory purposes and principles of sentencing and which enhancement or mitigating factors were appropriate. Since the court sentenced the defendant within the appropriate statutory range, we review the sentence "under an abuse of discretion standard with a 'presumption of reasonableness.'" In increasing the defendant's sentence beyond the minimum, the trial court considered a number of facts, including that the defendant had numerous prior convictions and probation violations and had committed the present offenses while on probation, and determined that these factors outweighed the mitigating factor of the defendant's attempt to self-rehabilitate. Moreover, we note that the trial court's comment concerning the danger to the public caused by the defendant's presence on the lawnmower that night was not made in the course of the court's discussion regarding the enhancement of the defendant's sentence, as alleged by the defendant, but instead during the trial court's discussion concerning the need to protect the public and seriousness of the offense which are relevant to the consecutive sentencing consideration. Accordingly, we conclude that the trial court did not abuse its discretion in sentencing the defendant.

# V. Recusal

The defendant lastly argues that the trial judge abused his discretion in declining to recuse himself. He asserts that the combination of his complaints against the trial judge, when evaluated under an objective standard, meant that the judge's impartiality could reasonably be questioned.

The defendant filed a motion for recusal that was heard at the start of the motion for new trial. The defendant questioned the trial judge's impartiality because the judge had previously worked in the district attorney's office and because the defendant had apparently filed a complaint against the judge with the Board of Professional Responsibility, as well as a lawsuit in the U.S. District Court. However, we note that the defendant did not present any evidence in support of his motion or make the motion part of the record on appeal.

Whether to "grant a motion for recusal is within the discretion of the trial judge." Bean v. Bailey, 280 S.W.3d 798, 805 (Tenn. 2009). Our supreme court has explained that a motion to recuse should be granted "when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Smith v. State, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted). "[E]ven if a judge subjectively believes he or she can be fair and impartial, the judge should disqualify himself or herself upon request whenever the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias." Id. (internal quotation omitted).

In ruling on the defendant's motion, the trial judge first discussed his prior employment with the district attorney's office. The judge noted that he recognized the defendant's name but did not specifically recall any of the defendant's prior cases. The judge observed that the offenses at hand occurred on April 9, 2010, which was more than four years after the judge had left his employment there. The judge concluded that there was nothing "in front of [him] to cause [him] to think that . . . there was something about that particular case or cases that [he] . . . somehow or another . . . developed enmity against [the defendant]."

In discussing the complaint and suit filed against him by the defendant, the judge stated that the only information he had concerning a complaint and suit having been filed against him was that in the defendant's motion for recusal. The judge noted that he had not been contacted to respond to the allegations and knew nothing of the substance of either. The judge concluded, "I don't see how that in any way causes there to be any question about whether or not that I have a conflict or that I would somehow or another rule against [the

defendant] contrary to the law and the evidence in the case."

Upon review, we cannot conclude that the trial judge abused his discretion in denying the defendant's motion for recusal. We initially note that the defendant, citing State v. Warner, 649 S.W.2d 580, 582 (Tenn. 1983), acknowledges that "[a] judge who is a former prosecutor is not expected to recuse himself from every trial involving a defendant the judge once prosecuted." See also State v. Conway, 77 S.W.3d 213, 225 (Tenn. Crim. App. 2001) (concluding that recusal not required when nothing more was shown than that the trial judge had previously prosecuted a defendant on an unrelated case). Here, the trial judge left the district attorney's office more than four years before the defendant committed the offenses at hand and, although recognizing the defendant's name, had no "specific memory about any of [the defendant's] prior cases." The defendant presented no proof at the hearing that the judge had been involved, either directly or indirectly, in prosecuting any of his prior cases. As to the complaint and suit allegedly filed against the trial judge, the judge had heard nothing of either aside from that in the defendant's motion, and the defendant presented no proof at the hearing as to the nature of the complaints or any facts relating to them. We observe, as has a previous panel of this court, "that a trial judge is not required to recuse himself merely because a party has filed a formal complaint against the judge." Connie Lee Arnold v. State, No. E2006-00440-CCA-R3-PC, 2007 WL 2216554, at *7 (Tenn. Crim. App. Aug. 3, 2007) (citing State v. Parton, 817 S.W.2d 28, 30 (Tenn. Crim. App. 1991)), perm. app. denied (Tenn. Dec. 26, 2007). We simply cannot conclude that "'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" Smith, 357 S.W.3d at 341 (quoting Bean, 280 S.W.3d at 805).

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE