IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 18, 2015 Session

## JEFFREY S. WHITAKER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Roane County**
**No. 10920     E. Eugene Eblen, Judge**

---

**No. E2014-02240-CCA-R3-PC – Filed January 7, 2016**

---

The Petitioner, Jeffrey S. Whitaker, appeals the Roane County Criminal Court's dismissal of his second petition for post-conviction relief. On appeal, the Petitioner argues that the one-year statute of limitations should be tolled based on the later-arising claims doctrine and the discovery rule of contract law, that his plea agreement was breached when his judgments were corrected to show a release eligibility of 100% and when the trial court imposed partially consecutive sentences, and that the post-conviction court erred in failing to apply the doctrine of judicial estoppel against the State. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Cashauna C. Lattimore, Knoxville, Tennessee, for the Petitioner, Jeffrey S. Whitaker.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Russell Johnson, District Attorney General; and Frank A. Harvey, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On November 10, 1994, the Petitioner pled guilty to eight counts of child rape in the Roane County Criminal Court, and the State agreed to dismiss the remaining eighteen counts involving child rape and aggravated sexual battery. See State v. Jeff Whitaker, No. 03C01-9509-CC-00256, 1996 WL 600375, at *1-2 (Tenn. Crim. App. Oct. 15, 1996), perm. app. denied (Tenn. Feb. 8, 1999). The written plea agreement stated that the Petitioner was pleading guilty to eight counts of child rape in exchange for the following conditions:

1.      The State would recommend a forty-five-year sentence (a cap);

2.      The trial court would determine the Petitioner's sentence at a later hearing;

3.      The Petitioner would be sentenced as a "Range I, Standard" offender; and

4.      Counts 4-10; 12-15; 19-22; and 24-26 of the indictment would be dismissed.

At the guilty plea hearing, the State summarized the facts underlying the Petitioner's guilty plea:

With regard to all counts upon which pleas are being entered, we would stipulate that the offenses occurred between July and December of 1993 at the residence of the defendant located in Roane County. In Counts 1, 2 and 3, during that time period, we would stipulate that the defendant engaged in sexual penetration of [A.D.],[1] a child under the age of 13. In Count 11 that he engaged in unlawful sexual penetration of [V.B.], a child under the age of 13. In Counts 16 through 18, on three occasions he engaged in unlawful sexual penetration of [L.G.], a child under the age of 13. And in Count 23, likewise, during the same time period, he engaged in unlawful sexual penetration of [B.S.], a child under the age of 13.

The State then made the following statement to the trial court:

Your Honor, our recommendation first is that the defendant would fall in the Standard Range One Category. We will have a further sentencing hearing on the 27th day of February. At which time either side can present evidence to Your Honor concerning mitigating and aggravating factors. The State will recommend a sentence of 45 years at the conclusion of that hearing. Of course the ultimate sentence will be up to Your Honor. And in accordance with the law that's provided for child rape, the sentence will be to serve in its entirety.

The trial court then accepted the Petitioner's guilty plea to the eight counts of child rape.

---

[1] It is the policy of this court to refer to minor victims of sexual offenses by their initials.

At the March 20, 1995 sentencing hearing, the State made the following assertions to the court after the close of proof:

> Your Honor, by way of a starting point in this case, the defendant has entered guilty pleas in eight counts of child rape. That sentence, of course, is to be served by law. Under the Child Rape Law it is to be served 100 percent. As part of the plea agreement, the State agreed that it would recommend 45 years. The Court is to determine the total sentence within the appropriate range, and whether it is concurrent or consecutive to the Anderson County sentence.

Later, the State and defense counsel made the following arguments regarding the Petitioner's sentence:

> [The State]: Your Honor has the decision of sentencing the defendant here on eight counts of child rape. The sentence range is a Range One Offender, is between 15 to 25 years on each one of those sentences. As indicated as part of the plea agreement, the State is simply recommending 45 years. . . .

> Defense Counsel: May the Court, please, I don't think there's any question about that. I think the very least the Court could do under the law would be to sentence him to 15 years, day for day, no parole, no good and honor time. I know you often times read things about people getting parole, getting out of prison. It's not going to happen to [the Petitioner]. Fifteen years that he has to serve day for day, no credits, none.

> . . . .

> . . . This is a 32-year old man. . . . [I]f the court gave him the minimum sentence, he could be 47 years old before he was out—or 46. I guess he's been in about a year or so now, so that would be—with credit for that he'd be 46 or 47, at the very minimum the Court could do.

> . . . I don't know necessarily that . . . we believe that a 15-year sentence is the appropriate sentence. I'm not going to suggest that. I'm not going to suggest that. I'm just going to say that I think that 45 years is too much, [a]nd that probably somewhere between [15] and 45 years is the appropriate sentence. We could ask for a 15-year sentence. As an advocate, I say that, understanding the Court has within that 30 year span, the ability to make . . . consecutive [or] concurrent. And there is no question, also, that these can be consecutive by statute. There's no question

-3-

about that. And I think the Court would have to find by a preponderance of the evidence that certain factors exist, one of which is that has to do with sexual abuse of minor children. And I don't think there's any question about that. So that these could be consecutive sentences. That is under the Section 40-35-115. That is Number 5, that it involved—two or more statutory offenses involved in the sexual abuse of a child. It is within your power to make these consecutive. We'd ask the Court to look at the entire case.

After hearing the parties' arguments, the trial court imposed fifteen-year sentences for each of the eight counts and ordered counts 1, 11, and 16 served consecutively to one another for an effective sentence of forty-five years.[2] See id. The court specifically noted that the fifteen-year sentences were "to serve, as you already know" and that there was "no portion with that." Although the State, defense counsel, and the trial court stated that the fifteen-year sentences were to be served at 100% pursuant to the "child rape law," the original judgments entered reflect a release eligibility of 30% for the convictions. On direct appeal, the Petitioner asserted that the trial court erred in ordering three of the sentences served consecutively, and this court affirmed the judgments of the trial court. See id. at *4.

On April 5, 1999, the Petitioner filed a post-conviction petition, asserting that his plea was involuntary and that he received ineffective assistance of counsel. See Jeffrey Whitaker v. State, No. E2001-02399-CCA-R3-PC, 2003 WL 21276125, at *1 (Tenn. Crim. App. June 3, 2003). The State filed a response, asserting the following:

On March 20, 1995, Petitioner was sentenced to 15 yrs. On each of eight Counts with two to run consecutive, for a total effective sentence of 45 yrs, at 30%. The Department of Corrections first rejected this 30% classification, but later notified all parties that this sentence would indeed be honored, thereby giving Petitioner "the benefit of his bargain."

. . . .

Petitioner['s] trial counsel provided advice and service to petitioner well beyond that required by relevant case law. Petitioner was facing 21 Counts of child rape, each subject to a minimum penalty of 15 years and

---

[2] The Petitioner made the guilty plea transcript an exhibit to his second petition for post-conviction relief. Although page thirty-eight of the thirty-nine-page transcript was omitted from the exhibit, the remainder of the transcript makes it clear that the court imposed fifteen-year sentences for each of the eight counts and ordered counts 1, 11, and 16 served consecutively to one another for an effective sentence of forty-five years. The original judgments of conviction also reflect this sentence.

maximum of 25 years in Range One. (Petitioner knew that the State would request the Court to run only two sentences consecutive. See Guilty Plea set attached as Exhibit No. 1)[.] Petitioner had clearly given non-custodial incriminating statements regarding most or all victim[s'] allegations. The sentencing statutes required service of all sentences imposed. Counsel was able to negotiate Range One, Standard sentences. This means service at 30% prior to release eligibility. There were multiple child victims available to give evidence of Petitioner['s] crimes. His own daughter had made rape allegations against him. Petitioner['s] counsel was able to negotiate Guilty Pleas on only eight of 26 counts pending against Petitioner. This outcome avoided potential damage to very young child victims during lengthy litigation. The agreed sentences were set at the minimum of 15 yrs. on each with the Court to decide the issue of concurrent/consecutive sentencing. His outcome of 45 years at 30% under his circumstances speaks volumes about the competence of his trial counsel.

The Petitioner then filed a "Rebuttal to State's Response to Petition for Post-Conviction Relief." In it, the Petitioner argued that his sentence was the result of ineffective assistance of trial counsel:

The petitioner did not receive "the benefit of his bargain" but rather was lulled into believing that his pretrial statement had sealed his fate and that there was no other alternative. And, in spite of his Range I 30% classification, it is commonly known among inmates that the Parole Board does not parole sex offenders. Therefore, even if petitioner is fortunate enough to receive all of his sentence reduction credits, he will still be required to serve thirty (30) calendar years before expiring his term of imprisonment.

He also argued that trial counsel was ineffective in allowing the trial court to sentence him to consecutive sentences without requiring proof of the aggravating circumstances by a preponderance of the evidence:

[T]he State, through their response, has continually praised counsel's ability to negotiate Range I, Standard sentences on only eight (8) counts of twenty-six (26) counts pending against the petitioner and considers the outcome of 45 years at 30% to be a great accomplishment on the part of counsel. Yet at sentencing, counsel allowed the court to sentence petitioner consecutively based entirely upon enhancement factors which is clearly in direct contravention of the 1989 Sentencing Reform Act. . . . .

At the evidentiary hearing, trial counsel testified that he discussed with the Petitioner that "the minimum sentence on child rape was 15 years, and that that [was] served at 100%, with no credits for good time or any other time." He added, "I explained to [the Petitioner] that there was no parole; that [the sentence] was to be served at 100%; that the minimum sentence is fifteen years." The Petitioner testified that trial counsel never reviewed the plea agreement with him before asking him to sign it. Following this hearing, the post-conviction court denied post-conviction relief, finding that the Petitioner's guilty pleas were voluntary and knowing and that trial counsel had rendered effective assistance. See id. at *3. On appeal, this court affirmed the denial of post-conviction relief. See id. at *4-5.

Thereafter, the Petitioner filed a petition for habeas corpus relief[3] in the Morgan County Criminal Court, arguing that he was sentenced illegally and that the trial court erred in not applying the doctrine of judicial estoppel against the State. See Jeffrey S. Whitaker v. Morgan, No. E2007-02884-CCA-R3-HC, 2009 WL 454256, at *1 (Tenn. Crim. App. Feb. 24, 2009), perm. app. denied (Tenn. Aug. 17, 2009). After appointing counsel and conducting a hearing on the petition, the habeas corpus court dismissed the petition, finding that the Petitioner had not established that the judgments were void because the failure to place a check in the child rapist box was a clerical error and that the Petitioner failed to establish that his sentences had expired. See id.

On appeal, the Petitioner argued that the trial court lacked jurisdiction to sentence him as a Range I, standard offender with a release eligibility of 30% because this sentence was contrary to Tennessee Code Annotated section 39-13-523, requiring a release eligibility of 100% for child rapists, and that any ambiguities in the plea agreement should be construed in his favor. See id. at *2. He also asserted that the State should have been precluded from arguing that he did not receive a sentence providing for an early release date after the State claimed during his post-conviction case that he received the benefit of his bargain when he received a sentence with a 30% release eligibility. See id. at *3.

In considering these issues, this court meticulously evaluated the appellate record:

> The eight judgments in the record reflect that the petitioner was sentenced to fifteen years as a Range I, standard offender for each conviction. The box for "child rapist" is not checked on any of the eight judgments, although Tennessee requires a child rapist to serve a sentence in its entirety, "undiminished by any sentence reduction credits such person may be eligible for or earn." T.C.A. § 39-13-523(b) (Supp. 1994)

---

[3] A copy of the petition for writ of habeas corpus was not included in the appellate record.

(amended 1998, 2007). The record reflects that other counts against the petitioner for child rape and aggravated sexual battery were dismissed pursuant to the plea agreement, on which the petitioner was labeled a "Range I, standard" offender. . . .

The guilty plea acceptance hearing transcript reflects that the parties understood the agreement involved a sentence of forty-five years to be served "in its entirety," even though the petitioner was a Range I offender. The sentencing hearing transcript reveals the State began its argument for a sentence of forty-five years at one hundred percent. The transcript shows defense counsel stated that the minimum sentence available to the trial court was a fifteen-year sentence "day for day, no parole, no good and honor time" and that the petitioner would have to serve the sentence with no credits and would not receive parole. The sentencing transcript shows the trial court imposed a "sentence to serve" consisting of three consecutive fifteen-year sentences, with the other sentences running concurrently.

Id. at *1. As to the Petitioner's claim that his sentences were illegal, this court held that he was not entitled to relief:

[T]he petitioner has not met his burden to demonstrate that the sentences actually imposed were illegal. Review of the sentencing hearing transcript reveals that the State, defense counsel, and the court stated that the fifteen-year sentences were to be served at one hundred percent in compliance with the "child rape law." Although the trial court stated that "the sentence will have to be 15 years on each count, as a Range I offender, by law," the trial court imposed, in its next sentence, three consecutive sentences and said that each was a "sentence to serve. There's no portion with that." The judgments, in contrast, do not include the one hundred percent service time. Where the transcript and judgments conflict, the transcript controls. State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985) (citing State v. Zyla, 628 S.W.2d 39, 42 (Tenn. Crim. App. 1981)).

Id. at *2. As to the Petitioner's judicial estoppel argument, the trial court noted that the State "respond[ed] to this claim in a footnote, in which it states that the State's post-conviction pleading included the 'erroneous statement' that the petitioner received the benefit of his sentencing bargain." Id. at *3. This court also held that the Petitioner was not entitled to relief on this issue:

[T]he record does not show that the petitioner's judgments are void. While we acknowledge that the judgments should have been corrected earlier, the

-7-

petitioner's allegations of judicial estoppel require examination outside the record. See Taylor v. State, 995 S.W.2d at 83 (holding that "[a] voidable conviction or sentence is one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity.")[.] Because the petitioner alleges a claim for relief from a voidable judgment, this is not a cognizable claim for habeas corpus relief, which may only be granted for void judgments. The petitioner is not entitled to relief.

Id. This court affirmed judgment of the habeas corpus court but remanded the case for correction of the judgments[4] to reflect a release eligibility of 100% because the Petitioner had been convicted of child rape. See id. Approximately two weeks after this court filed its opinion in the habeas corpus case, the Petitioner filed a pro se petition for rehearing, despite the fact that he was represented by counsel.[5] After determining that the Petitioner had raised no issues that had not been considered by the court in reaching its decision, this court denied the motion three days later. The Tennessee Supreme Court denied permission to appeal a few months later. See id. at *1.

On April 7, 2011, the Petitioner filed a second post-conviction petition pro se, which is the subject of this appeal. In this petition, he alleges that he has later-arising claims. First, he argues that the State breached its promise that he would receive a sentence with a 30% release eligibility pursuant to the terms of his plea agreement, and then denied making such a promise in a later proceeding, which resulted in entry of corrected judgments reflecting sentences with 100% release eligibility. Second, he contends that his plea agreement was breached when the judgments were corrected to reflect three consecutive fifteen-year sentences at 100% release eligibility. Third, he argues that the terms of the plea agreement were breached when the corrected judgments required him to serve a sentence of community supervision for life pursuant to Tennessee Code Annotated section 39-13-524 upon the expiration of his sentences.

On June 17, 2011, the Petitioner filed a supplement containing authorities in support of his second post-conviction petition. On December 22, 2011, the post-conviction court appointed counsel for the Petitioner. However, on April 9, 2012, the

---

[4] Only one corrected judgment, which was filed on July 27, 2009, was included in the appellate record. This corrected judgment shows that the Petitioner was convicted of the offense of child rape in count 23, and the box for "community supervision for life" is checked. All eight of the original judgments, which were entered on March 20, 1995, were attached as an exhibit to the Petitioner's second post-conviction petition.

[5] We have taken judicial notice of the Petitioner's pro se petition for rehearing and this court's denial of the petition, as it was not included in the appellate record.

Petitioner, pro se, filed an amended petition for post-conviction relief and memorandum of law, alleging that the trial court violated Article I, section 25 of the Tennessee Constitution when it accepted and imposed a sentence pursuant to an agreed upon sentencing cap. On June 4, 2012, appointed counsel adopted the pro se post-conviction petition and the amended petition.

On April 2, 2013, the Petitioner filed a pro se "Motion for Mandatory Answer," asking for an order directing the State to respond to his post-conviction petition. On June 12, 2014, the State filed a "Response to Post-Conviction Petition," contending that the Petitioner filed his petition outside the one-year statute of limitations, that none of the exceptions to the statute of limitations applied, and that a prior petition for writ of habeas corpus attacking the merits of the convictions had been resolved on the merits.

On June 25, 2014, the Petitioner filed a pro se "Motion to Enforce Plea Agreement" and accompanying memorandum of law, asking the post-conviction court to enforce the plea agreement, which he claimed entitled him to fifteen-year sentences for each of the eight counts to be served concurrently with one another and concurrently with the Anderson County sentences, or to vacate the plea agreement and restore the parties to the status they held prior to entry of the plea agreement. Also on June 25, 2014, the Petitioner filed a pro se "Reply in Opposition of State's Response to Petition for Post Conviction Relief." In it, the Petitioner argued, inter alia, that he had a later-arising claim because the plea agreement was not breached until the judgments were corrected to reflect a release eligibility of 100%, that his claims regarding the consecutive nature of his sentences did not arise until after the corrected judgments were entered, that his claims were not previously determined because neither the habeas corpus court nor the Tennessee Court of Criminal Appeals had determined whether the 30% release eligibility was an element of the plea agreement, and that despite the State's claims to the contrary, the corrected judgments did not show "the true state of [the] plea agreement."

On June 30, 2014, the trial court conducted a hearing on the second post-conviction petition. No proof was presented, although the trial court heard arguments from both parties. Petitioner's counsel[6] stated that she had received copies of the Petitioner's pro se filings and asserted that the issues raised in those filings were appropriate. Although she acknowledged that the petition had been filed outside the statute of limitations, she claimed, citing Sands v. State, 903 S.W.2d 297 (Tenn. 1995), and Burford v. State, 845 S.W.2d 204 (Tenn. 1992), that the statute of limitations should be equitably tolled because the Petitioner's grounds for relief arose after the expiration of the statute of limitations period. She explained that the Petitioner's judgments were

---

[6] The appellate record does not contain an order appointing counsel of record to represent the Petitioner, although it appears that she made her first appearance on behalf of the Petitioner at the June 30, 2014 hearing.

corrected on July 27, 2009, to show a release eligibility of 100%, following the unsuccessful appeal of his habeas corpus case, and that the Petitioner did not receive copies of the corrected judgments until January 2011, which was well beyond the statute of limitations period. Consequently, she argued that a strict application of the statute of limitations would deny the Petitioner a reasonable opportunity to present his claims.

As to the merits of the petition, counsel argued that the State breached the plea agreement when the judgments were corrected to show a release eligibility of 100% because the plea agreement classified the Petitioner as a Range I, standard offender. She stated that although the Tennessee Court of Criminal Appeals remanded the case for entry of corrected judgments in the habeas corpus case because it believed the 30% release eligibility was a clerical error, she referenced the State's July 2, 2001 response to the Petitioner's first post-conviction petition, wherein the prosecutor stated that the Petitioner received a sentence of forty-five years with a release eligibility of 30%, that the Department of Correction initially honored the sentence containing a 30% release eligibility, and that the Petitioner received the benefit of his bargain. She said that despite these assertions, the State later changed its position during the Petitioner's habeas corpus case and argued that the 30% release eligibility was a clerical error, which resulted in the entry of the corrected judgments reflecting a release eligibility of 100%. Counsel claimed, citing New Hampshire v. Maine, 532 U.S. 742, 749 (2001), that the doctrine of judicial estoppel should preclude the State from using one argument in one phase of the case and using a different argument in a later phase of the case simply because its interests have changed. Moreover, citing Santobello v. New York, 404 U.S. 257, 262 (1971), she argued that the Petitioner bargained for and received a 30% release eligibility, and the State breached this agreement when the judgments were corrected to reflect a 100% release eligibility. She also claimed the Petitioner bargained for the Roane County sentences to be served concurrently to one another and that the State breached the plea agreement when the sentences were ordered to be served consecutively to one another. For these reasons, counsel argued that the post-conviction court should allow the Petitioner to withdraw his guilty plea and return the parties to the positions they had prior to the plea negotiations.

The State argued that the Petitioner's second post-conviction petition had been filed outside the one-year statute of limitations and that none of the exceptions to the statute of limitations applied. The State conceded that because the Petitioner's offenses fell "outside of the July 1st, [19]96 date set out in the applicable statute," the Petitioner should not have been placed on community supervision for life. However, the State argued that the remaining issues in the second petition were not late-arising because these issues had already been addressed by the trial court and the Tennessee Court of Criminal Appeals in the Petitioner's habeas corpus case. As to the issue regarding the manner of service of the sentences, the State asserted that the issue of whether the sentences would

-10-

be served concurrently or consecutively was not included in the plea agreement and that the trial court made the decision to impose partially consecutive sentences after a sentencing hearing. As to the claim that the plea agreement was breached, the State asserted that the transcript of the sentencing hearing established that the trial court, the State, and defense counsel stated that the Petitioner's sentence had a release eligibility of 100%. The State explained that the district attorney's office simply "got it wrong" in the first post-conviction case when it asserted that the Petitioner's release eligibility was 30%, and the State later realized its mistake after reviewing the record, and the judgments were corrected. It stated that the Petitioner was not "wanting the benefit of the bargain that he got," he was "want[ing] the benefit of that . . . clerical mistake that was corrected." Finally, the State argued that the Petitioner was not entitled to equitable tolling because the corrected judgments were filed in 2009, and the Petitioner's attorney at the time was made aware of the court's opinion regarding the correction of the judgments. At the conclusion of the hearing, the post-conviction court held that the Petitioner was not subject to lifetime supervision but that all other claims for post-conviction relief were denied.

On July 15, 2014, the Petitioner filed a premature notice of appeal which was considered timely pursuant to Tennessee Rule of Appellate Procedure 4(d). By written order entered on November 12, 2014, the post-conviction court ordered that the imposition of the lifetime supervision provision on the corrected judgments be "lifted" but denied post-conviction relief as to the remaining claims because the petition was time-barred and because the claims had been previously determined in the Petitioner's habeas corpus case.

## ANALYSIS

The Petitioner initially asserts that the one-year statute of limitations for post-conviction petitions should be tolled based on the later-arising claims doctrine, see Whitehead v. State, 402 S.W.3d 615, 623 (Tenn. 2013); Burford, 845 S.W.2d at 208, and the discovery rule of contract law, see Pero's Steak & Spaghetti House v. Lee, 90 S.W.3d 614, 621 (Tenn. 2002); Foster v. Harris, 633 S.W.2d 304, 305 (Tenn. 1982). He contends that his plea agreement was breached when his judgments were corrected to show a release eligibility of 100% and when the trial court imposed partially consecutive sentences resulting in an effective sentence of forty-five years. See State v. Mellon, 118 S.W.3d 340, 346 (Tenn. 2003). The Petitioner also argues that the State should be judicially estopped from arguing that the 30% release eligibility was merely a clerical error on the original judgments entered in his case when it argued during his first post-conviction case that the 30% release eligibility was a bargained-for element of the plea agreement. See New Hampshire, 532 U.S. at 749; Marcus v. Marcus, 993 S.W.2d 596, 602 (Tenn. 1999); Cardin v. Campbell, 920 S.W.2d 222, 223-24 (Tenn. Ct. App. 1995).

We conclude that the Petitioner is not entitled to relief because this is the Petitioner's second post-conviction petition, because this case does not require due process tolling, and because the claims in this petition have been previously determined.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief," and a petitioner may not file more than one post-conviction petition "attacking a single judgment." Id. § 40-30-102(c). If a prior petition has been resolved on the merits by a court of competent jurisdiction, any second or subsequent post-conviction petition shall be summarily dismissed. Id. "A petitioner may move to reopen a post-conviction proceeding that has been concluded, under the limited circumstances set out in § 40-30-117." Id.

A person in custody under a sentence of a court of this state must petition for post-conviction relief within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one year of the date on which the judgment becomes final. Id. § 40-30-102(a). "The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity." Id. Moreover, "[t]ime is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise." Id. If it plainly appears on the face of the post-conviction petition that the petition was filed outside the one-year statute of limitations or that a prior petition attacking the conviction was resolved on the merits, the trial court must summarily dismiss the petition. Id. § 40-30-106(b). In addition, "[i]f, on reviewing the petition, the response, files, and records, the court determines conclusively that the petitioner is entitled to no relief, the court shall dismiss the petition." Id. § 40-30-109(a) (2006).

Tennessee Code Annotated section 40-30-102(b) provides three exceptions to the statute of limitations for petitions for post-conviction relief: (1) claims based on a final ruling of an appellate court establishing a constitutional right not recognized as existing at the time of trial and given retroactive effect by the appellate courts; (2) claims based upon new scientific evidence establishing that the petitioner is actually innocent of the conviction offense; and (3) claims seeking relief from a sentence that was enhanced because of a previous conviction and the previous conviction was later held to be invalid. Id. §§ 40-30-102(b)(1)-(3), -117(a)(1)-(3) (establishing the same requirements for reopening a post-conviction petition).

As previously stated, the Post-Conviction Relief Act contemplates the filing of one petition for post-conviction relief, and this is the Petitioner's second post-conviction petition. He does not dispute that it was filed well outside the statute of limitations. In addition, it is clear that none of the exceptions to the one-year statute of limitations are applicable and that the Petitioner did not meet the requirements for reopening a post-conviction petition.

Nevertheless, due process concerns may toll the statute of limitations for post-conviction relief. The Tennessee Supreme Court recently clarified the standard for due process tolling, holding that a post-conviction petitioner is entitled to tolling of the statute of limitations upon a showing "(1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing." Bush v. State, 428 S.W.3d 1, 22 (Tenn. 2014) (citing Whitehead, 402 S.W.3d at 631). The court explained that pursuing one's rights diligently "'does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts [to pursue his or her claim].'" Id. (quoting Whitehead, 402 S.W.3d at 631). However, it stressed that due process tolling "'must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" Id. (quoting Whitehead, 402 S.W.3d at 631-32). The court also identified three circumstances in which due process required a tolling of the statute of limitations: (1) when the claim for relief arises after the statute of limitations has expired; (2) when a prisoner's mental incompetence prevents him or her from complying with the statute of limitations; and (3) when a prisoner has been misled by attorney misconduct. Id. at 23 (citing Whitehead, 402 S.W.3d at 623-24). "The question of whether the post-conviction statute of limitations should be tolled is a mixed question of law and fact that is . . . subject to de novo review." Id. at 16 (citing Smith v. State, 357 S.W.3d 322, 355 (Tenn. 2011)); Whitehead, 402 S.W.3d at 621.

At first glance, this case could be considered one in which the grounds for overturning the conviction arose after the expiration of the one-year statute of limitations. The Petitioner asserts that he did not discover the July 29, 2009 corrected judgments until January 2011, which is when he claims the statute of limitations should have begun to run, and that he diligently filed the instant post-conviction petition on April 7, 2011. However, as noted by the State, this court has consistently held that the correction of a clerical error on a judgment of conviction "does not re-trigger the statutory period for filing a petition for post-conviction relief." Lonnie Jones v. State, No. W2001-00741-CCA-R3-PC, 2001 WL 1516977, at *2 (Tenn. Crim. App. Nov. 21, 2001); Alan Hall v. State, No. E2000-01522-CCA-R3-PC, 2001 WL 543426, at *3 (Tenn. Crim. App. May 23, 2001) (holding that the judgment became final after entry of the original judgment of conviction and that the entry of the corrected judgment, showing that the petitioner would

serve 100% of his sentence in confinement rather than 30% as was erroneously reflected on the original judgment, did not give the petitioner an additional year in which to file a petition for post-conviction relief); <u>Kenneth J. Hall v. State</u>, No. 03C01-9609-CR-00342, 1998 WL 208080, at *2 (Tenn. Crim. App., at Knoxville, Apr. 15, 1998) (stating that "correction of a judgment pursuant to Rule 36 does not extend the statutory period for filing a petition for post-conviction relief"). This claim was not later-arising because the transcript from the sentencing hearing shows that the State, the defense attorney, and the trial court all stated that the Petitioner was to receive a sentence with a release eligibility of 100% for his convictions for child rape. <u>See</u> T.C.A. § 39-13-523(b). The Petitioner then had one year from the date of the final action of the highest state appellate court to petition for post-conviction relief. <u>See</u> <u>id.</u> § 40-30-102(a). Because the Tennessee Supreme Court denied permission to appeal his case on February 8, 1999, the Petitioner had until February 8, 2000, to file his post-conviction petition. Nevertheless, the Petitioner did not file his second post-conviction petition until April 7, 2011, more than eleven years after the one-year statute of limitations expired.

Even if we conclude that entry of the corrected judgments tolled the statute of limitations on due process grounds, the Petitioner filed his second post-conviction petition nearly a year after the statute of limitations expired. Although the Petitioner asks this court to toll the statute of limitations until January 2011, the time he claims he first became aware of the corrected judgments, it is clear that the Petitioner was aware of the correction of his judgments long before then. First, this court filed its opinion in the habeas corpus case on February 24, 2009, at a time when the Petitioner was still represented by counsel. Second, and most importantly, the Petitioner filed a pro se petition for rehearing approximately two weeks later on March 9, 2009, which this court promptly denied. This filing of this court's opinion in the habeas corpus case and the filing of this the pro se petition for rehearing belies the Petitioner's claims that he did not know the outcome of his habeas corpus case or the fact that his case was remanded for corrected judgments until January 2011. Even if we adopt the Petitioner's erroneous interpretation regarding when the statute of limitations began to run, which we decline to do, the Petitioner did not diligently pursue his rights under the first prong of the test outlined in <u>Whitehead</u>. Given the "General Assembly's clear preference that the post-conviction statute of limitations be strictly construed," we conclude that this case does not require the tolling of the statute of limitations under the later-arising claims doctrine or the discovery rule. <u>Bush</u>, 428 S.W.3d at 23.

We also conclude that the Petitioner is not entitled to relief because his claims have been previously determined. In dismissing the instant petition, the post-conviction court held not only that the Petitioner's second petition was time-barred and that his claims did not fall within the exceptions to the statute of limitations but also that the Petitioner's "specific complaints concerning his plea agreement and the percentage of his

sentence to be served [had] been previously litigated, either by this Court and/or the Court of Criminal Appeals in [the Petitioner's] earlier Habeas Corpus Petition." The record fully supports the findings of the post-conviction court. See T.C.A. § 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on it on the merits after a full and fair hearing . . . where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence."); Tenn. Sup. Ct. R. 28, § 2(E) ("A claim for relief is previously determined if a court of competent jurisdiction has ruled on the merits of the claim after a full and fair hearing at which petitioner is afforded the opportunity to call witnesses and present evidence."). All of the Petitioner's issues regarding his release eligibility were resolved during his habeas corpus case. Specifically, this court held that there was a clerical error in the judgments because "[r]eview of the sentencing hearing transcript reveal[ed] that the State, defense counsel, and the court stated that the fifteen-year sentences were to be served at one hundred percent in compliance with the 'child rape law.'" See Jeffrey S. Whitaker, 2009 WL 454256, at *2. The Petitioner's claims regarding judicial estoppel were also addressed during his habeas corpus case. After noting what was obviously a clerical error in the judgments, this court held that the Petitioner was not entitled to relief regarding his judicial estoppel claim and remanded the case for correction of the judgments to show a release eligibility of 100%.

After reviewing the record, we can comfortably conclude that the Petitioner would not have been entitled to any relief even if we had reviewed his issues on their merits. As this court previously observed, the transcript of the guilty plea submission hearing clearly shows that the parties and the trial court understood that the Petitioner's sentence would be served "in its entirety" based on the "the law that's provided for child rape." The transcript of the sentencing hearing reflects that the State argued for a forty-five-year sentence "to be served [at] 100%" pursuant to the "Child Rape Law" and that the defense argued for a minimum sentence of fifteen years, recognizing that this sentence would be served "day for day, no parole, no good and honor time" and "no credits, none." Finally, the transcript shows that the trial court ultimately imposed a "sentence to serve, as you already know" of three consecutive fifteen-year sentences with the remaining sentences served concurrently, for an effective sentence of forty-five years. Accordingly, we affirm the denial of post-conviction relief.

## CONCLUSION

Based on the aforementioned authorities and analysis, we conclude that the Petitioner is not entitled to relief because this is the Petitioner's second post-conviction petition, because this case does not require due process tolling, and because the claims in

this petition have been previously determined.  Accordingly, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE